PD-1597-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 1/2/2015 2:28:03 PM
Accepted 1/12/2015 5:19:06 PM
ABEL ACOSTA
CLERK

# NO. PD-1597-14
## COURT OF APPEALS NO. 02-13–00016-CR

## IN THE
## COURT OF CRIMINAL APPEALS
## OF TEXAS

**JOSEY WALES PARKS,**
Appellant

**VS.**

**THE STATE OF TEXAS,**
Appellee.

FILED IN
COURT OF CRIMINAL APPEALS

JANUARY 12, 2015

ABEL ACOSTA, CLERK

## PETITION FOR DISCRETIONARY REVIEW
## OF THE JUDGMENT OF THE SECOND COURT OF APPEALS
## FOR THE STATE OF TEXAS

On Appeal from the County Criminal Court No. 9
of Tarrant County, Texas in Cause No. 1263051
Hon. Brent Carr, Presiding

## PETITION FOR DISCRETIONARY REVIEW

L. PATRICK DAVIS
SBN 00795775
115 N. Henderson Street
Fort Worth, Texas  76102
(817)870-1544
(817)870-1589          fax

ATTORNEY FOR
APPELLANT/PRO BONO

# LIST OF INTERESTED PARTIES

**DEFENDANT/APPELLANT**

Josey Wales Parks

**Represented by:**

**Trial/Appeal:**

Hon. L. Patrick Davis
SBN 00795775
115 N. Henderson Street
Fort Worth, Texas 76102
(817)870-1544
(817)870-1589   fax

**COMPLAINANT**                                    **Represented by:      Trial/Appeal**

The State of Texas                                 Hon. Joe Shannon, Jr.
                                                   Tarrant County District Attorney
                                                   401 W. Belknap Street
                                                   Fort Worth, Texas 76196
                                                   (817)884-1400

# TABLE OF CONTENTS

List of Interested Parties.....................................i

Table of Contents............................................ii

Index of Authorities........................................iii

Statement Regarding Oral Argument............................vi

Statement of the Case.........................................1

Procedural History............................................1

Grounds for Review............................................2

**(1) Does the Court of Appeals' decision conflict with this Court's opinion in <u>State v. Steelman</u>, 93 S.W.3d 102 (Tex. Crim. App. 2002)?**

**(2) Does the Court of Appeals' decision conflict with this Court's opinion in <u>Crider v. State</u>, 352 S.W.3d 704 (Tex. Crim. App. 2011)?**

Argument......................................................2

Ground for Review No. 1.......................................3

Ground for Review No. 2.......................................9

Prayer.......................................................15

Certificate of Service.......................................16

Certificate of Compliance....................................16

Appendix:

Memorandum Opinion............................................A

# INDEX OF AUTHORITIES

**State Cases**

Cantu v. State, 817 S.W.2d 74 (Tex. Crim. App. 1991)...................................................3,9

Castro v. State, 227 S.W.3d 737 (Tex. Crim. App. 2007)...................................................5

Carmouche v. State, 10 S.W.3d 323 (Tex. Crim. App. 2000)...................................................5

Crider v. State, 352 S.W.3d 704 (Tex. Crim. App. 2011)...................................................2,8,12,13

Curry v. State, 808 S.W.2d 481 (Tex. Crim. App. 1991)...................................................13

Davis v. State, 947 S.W.2d 240 (Tex. Crim. App. 1997)...................................................6,8

Davis v. State, 831 S.W.2d 426 (Tex. Crim. App. 1992)...................................................12

Dubose v. State, 915 S.W.2d 493 (Tex. Crim. App. 1996)...................................................3

Estrada v. State, 154 S.W.3d 604 (Tex. Crim. App. 2005)...................................................9

Garza v. State, 120 Tex.Cr.R. 147, 48 S.W.2d 625 (1930)...................................................11

Gordon v. State, 801 S.W.2d 899 (Tex. Crim. App. 1990)...................................................12,13

Guzman v. State, 955 S.W.2d 85 (Tex. Crim. App. 1997)...................................................3,9

Horton v. State, 986 S.W.2d 297 (Tex. App.-Waco 1997, no pet.)...................................................3

Jones v. State, 579 S.W.2d 240 (Tex. Crim. App. 1979)...................................................11

Massey v. State, 933 S.W.2d 141 (Tex. Crim. App. 1996)...................................................11

McFarland v. State, 928 S.W.2d 482 (Tex. Crim. App. 1996), *cert. denied*, 519 U.S. 1119 (1997)...................................10

Montanez v. State, 195 S.W.3d 101 (Tex. Crim. App. 2006).........
.................................................................9

Perez v. State, 818 S.W.2d 512 (Tex. App.-Houston [1st Dist.]
1991, no pet.)...................................................3

Russell v. State, 717 S.W.2d 7 (Tex. Crim. App. 1986)...........
.................................................................4

Sherlock v. State, 632 S.W.2d 604 (Tex. Crim. App. 1982).........
................................................................11

State v. Davila, 169 S.W.3d 735 (Tex. App.-Austin 2005, no pet.)
................................................................12

State v. Ross, 32 S.W.3d 853 (Tex. Crim. App. 2000).............
.................................................................9

State v. Steelman, 93 S.W.3d 102 (Tex. Crim. App. 2002).........
..........................................................2,6,7,9

Swearingen v. State, 143 S.W.3d 808 (Tex. Crim. App. 2004).......
............................................................9,11,12

Williams v. State, 621 S.W.2d 609 (Tex. Crim. App. 1981).........
.................................................................5

Woods v. State, 956 S.W.2d 33 (Tex. Crim. App. 1997)............
.................................................................5

**Texas Constitution**
TEX. CONST. art. I, §9...................................4,8,10,13

**Texas Codes, Statutes, and Rules**
TEX. CODE CRIM. PROC. ANN. art. 14.01(b)(Vernon 2012)...........
.................................................................4

TEX. CODE CRIM. PROC. ANN. art. 18.01 (Vernon 2012).............
................................................................10

TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2012)............
...........................................................4,8,13,14

**United States Constitution**
U.S. CONST. amend IV...................................4,8,10,13

**Federal Cases**

Henry v. United States, 361 U.S. 98 (1968)...................................................4

Illinois v. Gates, 462 U.S. 213 (1983)....................................................10

Mapp v. Ohio, 367 U.S. 643 (1961)....................................................4

Terry v. Ohio, 392 U.S. 1 (1968)....................................................4

Whiteley v. Warden, 401 U.S. 560 (1971)...................................................13

## STATEMENT REGARDING ORAL ARGUMENT

Appellant does not believe oral argument would aid this Honorable Court in reaching a decision as this case rests on sound case law from this Court. The grounds raised in this petition have already been plowed by this Court.

**TO THE JUDGES OF THE HONORABLE COURT OF CRIMINAL APPEALS:**

**NOW COMES JOSEY WALES PARKS**, Appellant herein, and files this his Petition for Discretionary Review of the judgment of the Second Court of Appeals for the State of Texas.

## STATEMENT OF THE CASE

On October 19, 2012, Appellant was sentenced to six (6) months deferred adjudication probation in the County Criminal Court No. 9 of Tarrant County, Texas, in cause number 1263051 for the offense of Possession of Marijuana, under 2 ounces and assessed a fine of $150.00 as a result of a plea of guilty. (C.R., Vol. 1, p. 24). On August 2, 2012, the trial court denied Appellant's motion to suppress after an evidentiary hearing was conducted and provided its findings of fact and conclusions of law on the record. (R.R., Vol. 2, pp. 82-84). The trial court gave its permission to appeal. Appellant timely gave his Notice of Appeal specifically complaining of the denial of his suppression motion. (C.R., Vol. 1, p. 31).

## --FACTUAL STATEMENT--

The memorandum opinion of the Court of Appeals adequately sets out the disputed, factual background between the parties.

## PROCEDURAL HISTORY

The Second Court of Appeals affirmed the trial court's judgment and delivered a memorandum opinion on September 18, 2014. Appellant's timely filed motion for rehearing was denied on October 23, 2014. Appellant's timely filed motion for extension of time to

1

file his petition for discretionary review was granted on December 5, 2014. Appellant's petition for discretionary review is timely if filed on or before December 29, 2014.

## GROUNDS FOR REVIEW

**(1) Does the Court of Appeals' decision conflict with this Court's opinion in State v. Steelman, 93 S.W.3d 102 (Tex. Crim. App. 2002)?**

**(2) Does the Court of Appeals' decision conflict with this Court's opinion in Crider v. State, 352 S.W.3d 704 (Tex. Crim. App. 2011)?**

Ground I and Ground II will be argued separately.

## ARGUMENT

On September 18, 2014, the Fort Worth Court affirmed the judgment of the trial court in a memorandum opinion holding, *inter alia*, that the magistrate had a substantial basis for determining that probable cause existed to issue the search warrant and that the evidence seized subsequent to Appellant's illegal detention had no bearing on the procurement of the search warrant and the items seized thereafter. The Fort Worth Court's opinion conflicts and ignores this Court's decisions in both Steelman and Crider. *See* Crider v. State, 352 S.W.3d 704, 710 (Tex. Crim. App. 2011)(Judge Cochran, writing for the majority, assumed the day began at 12:00 am as well when the affidavit/record recited no time); State v. Steelman, 93 S.W.3d 102, 108 (Tex. Crim. App. 2002)(holding the mere odor of marijuana, standing alone, emitting from a residence does not give officers probable cause to believe Appellant was in

2

possession of marijuana in their presence). The Fort Worth Court does not have the luxury of disagreeing with the decisions of the Texas Court of Criminal Appeals. *See* <u>Horton v. State</u>, 986 S.W.2d 297, 300 (Tex. App.-Waco 1997, no pet.)(intermediate appellate courts are duty bound to apply the law as interpreted by the Court of Criminal Appeals)(opinion of Davis, C.J.). Accordingly, Appellant seeks discretionary review from this Court.

## GROUND FOR REVIEW NO. 1

**(1) Does the Court of Appeals' decision conflict with this Court's opinion in <u>State v. Steelman</u>, 93 S.W.3d 102 (Tex. Crim. App. 2002)?**

## GENERAL APPLICABLE STANDARDS

The trial court is the sole judge of credibility of the witnesses in a suppression hearing and, absent an abuse of discretion, the trial court's findings will not be disturbed. <u>Perez v. State</u>, 818 S.W.2d 512, 514 (Tex. App.-Houston [1st Dist.] 1991, no pet.); *see also* <u>Guzman v. State</u>, 955 S.W.2d 85 (Tex. Crim. App. 1997). Such findings are reviewed on an abuse of discretion standard and "will not be disturbed on appeal unless no reasonable review of the facts shown in the appellate record could support the trial court's ruling." <u>Dubose v. State</u>, 915 S.W.2d 493, 497-98 (Tex. Crim. App. 1996); <u>Cantu v. State</u>, 817 S.W.2d 74, 77 (Tex. Crim. App. 1991).

3

When a defendant seeks to suppress evidence on the basis of a Fourth Amendment violation, the defendant bears the burden of proof. Russell v. State, 717 S.W.2d 7, 9 (Tex. Crim. App. 1986). Once the defendant establishes that a (1) search or seizure has occurred and that (2) no warrant was obtained, the burden of proof shifts to the State. Id. If the State is unable to produce evidence of a warrant, then it must prove the reasonableness of the search or seizure. Id.

In the case at bar, Appellant argues that the trial court erred in denying his motion to suppress the fruits of his detention because they were obtained as a result of an unconstitutional detention. Mapp v. Ohio, 367 U.S. 643, 655 (1961); see TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2012); TEX. CONST. art. I, §9; U.S. CONST. amend. IV. It is undisputed that Littlejohn did not have a warrant to either detain Appellant or to arrest him. Thus, the State had the burden to affirmatively establish that Appellant had committed an offense or was about to commit an offense before Littlejohn made the detention. Henry v. United States, 361 U.S. 98 (1968); Terry v. Ohio, 392 U.S. 1 (1968); Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000); Woods v. State, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997); see also TEX. CODE CRIM. PROC. ANN. art. 14.01(b) (Vernon 2012). For government officials to be able to conduct investigative detentions, they must have reasonable suspicion based on specific,

4

articulable facts which, when combined with rational inferences from those facts, would lead the officer to conclude that a particular person actually is, has been, or soon will be engaged in criminal activity. Castro v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007). Articulable facts must amount to "more than a mere inarticulable hunch, suspicion, or good faith suspicion that a crime was in progress." Williams v. State, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981).

## APPLICATION OF LAW TO FACTS

Littlejohn testified that he conducted a "knock and talk" of Appellant's residence on September 20, 2011. (R.R., Vol. 2, p. 30). Littlejohn was unclear what time the "knock and talk" occurred. (R.R., Vol. 2, p. 32). At the time of the "knock and talk," Littlejohn smelled the odor of marijuana emitting from Appellant's house. (R.R., Vol. 2, p. 18). After the short conversation, Littlejohn left Appellant's residence and went back to the Crowley Police Department. (R.R., Vol. 2, p. 20). Littlejohn was then instructed by Wallace to go back to the residence, set up surveillance and make sure no one left the home so that Wallace could obtain a search warrant for the residence. (R.R., Vol. 2, p. 21). Littlejohn went back to the house and observed Appellant ride his bike and walk his dog. Id. Littlejohn then initiated a second conversation with Appellant and detained him, at the direction of Wallace, by placing him in the back of his patrol car. (R.R., Vol.

5

2, pp. 22-23). Littlejohn testified that his primary objective in detaining Appellant was the odor of the marijuana. (R.R., Vol. 2, pp. 33-34). A search warrant was later signed by a magistrate for Appellant's residence at 11:34 am the same day. (R.R., Vol. 2, p. 40,46; Vol. 3, SX-1). The warrant was executed at approximately 12:00 pm and the search took approximately two (2) hours. (R.R., Vol. 2, 53).

The question for this Court to decide is simply whether the initial arrest of Appellant could be legally made without a warrant or did the prolonged detention become an arrest. This Court has already held that the mere odor of marijuana, standing alone, emitting from a residence does not give officers probable cause to believe Appellant was in possession of marijuana in their presence. Steelman, 93 S.W.3d at 108. Secondly, the mere tip, standing alone, provided by Valerio's mother that Appellant was selling marijuana to her son does not constitute probable cause. Id. The tip was never substantiated and Appellant was never charged with dealing drugs. Id.

Finally, "a detention that is not temporary and reasonably related in scope to the circumstances which justified the interference, is unreasonable and, thus, violative of the Fourth Amendment." Davis v. State, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997). Both Littlejohn and Wallace erroneously thought Appellant was in possession of marijuana based on the mere smell of marijuana

6

emitting from Appellant's residence. (R.R., Vol. 2, pp. 33-34, 54). Wallace even stated that fact in his affidavit for the search warrant which the trial court adopted in its findings[1] of fact and again stated it in his testimony as well: "... Was he in possession of it? I say yes, he was because it was in his residence." (R.R., Vol. 3, SX-1(p. 1 of 5); (R.R., Vol. 2, pp. 46,82). But no one could remember neither the time of day the "knock and talk" occurred, nor when the subsequent detention of Appellant occurred, nor when the discovery of marijuana in Appellant's home occurred:

> Q. [DEFENSE]: Again, I guess the timing here -- You don't
>
> recall what time you did the knock and talk that day?
>
> A. [LITTLEJOHN]: *Not offhand, no, sir.*

(R.R., Vol. 2, p. 32)(emphasis added).

Without the time, one can only assume from the record that the day began at 12:00 am on September 20, 2011, and Appellant was in the back of the patrol car until at least two (2) hours after 11:34 am when the magistrate signed the search warrant as Wallace stated the search of the residence took nearly two (2) hours after he

---

[1] Wallace admitted at the hearing that although he states Appellant committed the offense of possession of marijuana on September 19, 2011, in his affidavit for the search warrant, the date was actually September 20, 2011. (R.R., Vol. 2, p. 46; Vol. 3, SX-1 (p. 1 of 5). The trial court judge incorporated said clerical error in his findings of fact. (R.R., Vol. 2, p. 82). Wallace did, however, get the date correct in his affidavit on when Littlejohn smelled the odor of marijuana at the residence. (R.R., Vol. 3, SX-1 (p. 2 of 5).

arrived with the signed warrant at noon. (R.R., Vol. 2, pp. 52-53).
That's nearly fourteen (14) hours that Appellant is sitting in the
back of the patrol car. *Accord* Crider, 352 S.W.3d at 710 (Judge
Cochran, writing for the majority, assumed the day began at 12:00
am as well when the affidavit/record recited no time); *see* Davis,
947 S.W.2d at 243. Did Littlejohn smell it at 12:01 am, 1:00 am,
2:00 am, 3:00 am, 4:00 am, 5:00 am, 6:00 am, 7:00 am, 8:00 am, 9:00
am, 10:00 am, 11:00 am???

Thus, the longer the time gap between those events, the more
likely the detention evolved into an arrest based on the record
before this Honorable Court. **Regardless of the time element**, the
continued detention of Appellant was based upon the officers'
conclusion that Appellant was in possession of marijuana based on
the smell of marijuana which Steelman has already held, as a matter
of law, is an erroneous belief and conclusion. Littlejohn,
following the orders of Wallace, exceeded the scope of any alleged
Terry detention in believing the odor of marijuana emitting from
one's residence equals possession of marijuana. It does not.
Thus, Appellant's warrantless detention, under these circumstances,
was an unlawful seizure of his person which led to the procurement
of a search warrant for his residence where marijuana was
subsequently discovered. U.S. CONST. amend. IV; TEX. CONST. art.
I, §9; *accord* Davis, 947 S.W.2 at 243-44. Accordingly, all
evidence seized after said illegal arrest must be suppressed. TEX.

8

CODE CRIM. PROC. ANN. art. 38.23(a)(Vernon 2012).

## GROUND FOR REVIEW NO. 2

**(2) Does the Court of Appeals' decision conflict with this Court's opinion in <u>Crider v. State</u>, 352 S.W.3d 704 (Tex. Crim. App. 2011)?**

## GENERAL APPLICABLE STANDARDS

The trial court is the sole judge of credibility of the witnesses in a suppression hearing and, absent an abuse of discretion, the trial court's findings will not be disturbed. <u>State v. Ross</u>, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *see also* <u>Guzman</u>, 955 S.W.2d at 85. Such findings are reviewed on an abuse of discretion standard and "will not be disturbed on appeal unless no reasonable review of the facts shown in the appellate record could support the trial court's ruling." <u>Montanez v. State</u>, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); <u>Cantu</u>, 817 S.W.2d at 77. But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, this Honorable Court reviews *de novo* a trial court's rulings on mixed questions of law and fact. <u>Estrada v. State</u>, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005).

When reviewing a magistrate's decision to issue a warrant, this Honorable Court applies a highly differential standard in keeping with the constitutional preference for a warrant. <u>Swearingen v. State</u>, 143 S.W.3d 808, 819-11 (Tex. Crim. App. 2004). Under this standard, this Court will uphold the magistrate's

9

probable cause determination "so long as the magistrate had a 'substantial basis for....conclud[ing]'"that probable cause existed. Illinois v. Gates, 462 U.S. 213, 236 (1983); Swearingen, 143 S.W.3d at 810. A request for a warrant must be supported by a sworn affidavit that sets out facts sufficient to support a finding of probable cause. TEX. CONST. art. I, §9; U.S. CONST. amend. IV; TEX. CODE CRIM. PROC. ANN. art. 18.01(b)(c) (Vernon 2012). In determining whether probable cause exists to issue a warrant, a magistrate may draw reasonable inferences from the affidavit and must interpret the affidavit in a common sense and realistic manner. McFarland v. State, 928 S.W..2d 482, 510 (Tex. Crim. App. 1996), cert. denied, 519 U.S. 1119 (1997).

Under the Fourth Amendment, an affidavit is sufficient if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed. Gates, 462 U.S. at 238-39; U.S. CONST. amend. IV; TEX. CONST. art. I, §9. Statements made during a motion to suppress hearing do not factor into the probable cause determination; rather, appellate courts examine only the four corners of the affidavit to determine whether probable cause exists. Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996).

## APPLICATION OF LAW TO FACTS

In support of probable cause for issuance of the search warrant in the case at bar, the affidavit of Wallace stated the date that Littlejohn detected the smell of marijuana emitting from Appellant's residence, but he failed to state the time said event took place.

Said affidavit is, therefore, fatally defective. First, there is nothing in the affidavit telling the magistrate at what time the alleged incident took place. Sherlock v. State, 632 S.W.2d 604, 608 (Tex. Crim. App. 1982); Crider, 352 S.W.3d at 710. An affidavit is inadequate if it fails to disclose facts which would enable the magistrate to ascertain the event upon which probable cause was founded was not so remote as to render it ineffective. Jones v. State, 579 S.W.2d 240, 242 (Tex. Crim. App. 1979), citing, Garza v. State, 120 Tex.Cr.R. 147, 48 S.W.2d 625, 627 (1930). Here, the affidavit is defective because the facts stated therein are not shown to be closely related to the time of the issuance of the warrant as to justify a finding of probable cause to search Appellant's residence for marijuana. The record shows the search warrant was issued by the magistrate at 11:34 am on September 20, 2011. Without knowing **what time** on September 20, 2011, Littlejohn made contact with Appellant and smelled the marijuana, the issuing magistrate was simply left to guess. Accord Swearingen, 143 S.W.3d 812-13 (Cochran, J., dissenting).

11

In failing to inform the magistrate as to **when** Littlejohn arrived at "876 Oarlock Drive, Crowley, Tarrant County, Texas" and smelled marijuana at Appellant's residence, the magistrate had no information as to whether any evidence of marijuana could still be found at Appellant's residence. Logically, the longer the time gap between the initial detention and the eventual signing of the search warrant, the less likely marijuana will be found in Appellant's home. Crider, 352 S.W.3d at 710. In the case at bar, there is a gap of nearly twelve (12) hours.

The affidavit in the case at bar does not state probable cause to issue a search warrant for Appellant's residence. Because September 20, 2011, started at 12:00 am, the question as to when Littlejohn detected the smell of marijuana remains unanswered. Did he smell it at 12:01 am, 1:00 am, 2:00 am, 3:00 am, 4:00 am, 5:00 am, 6:00 am, 7:00 am, 8:00 am, 9:00 am, 10:00 am, 11:00 am??? Without the time stated in the affidavit, the search warrant could not issue. Crider, 352 S.W.3d at 710; *accord* State v. Davila, 169 S.W.3d 735, 739-40 (Tex. App.-Austin 2005, no pet.); *see* Davis v. State, 831 S.W.2d 426, 440 (Tex. Crim. App. 1992); Gordon v. State, 801 S.W.2d 899, 914-15 (Tex. Crim. App. 1990). Thus, the seizure of Appellant's residence under these circumstances was an unlawful search and seizure. U.S. CONST. amend. IV; TEX. CONST. art. I, §9. Therefore, the evidence seized by virtue of the invalid warrant is subject to suppression under Article 38.23(a) of the Texas Code of

12

Criminal Procedure. TEX. CODE CRIM. PROC. ANN. art. 38.23(a)(Vernon 2012).

## TCCP Article 38.23

However, it is an exception to the provisions of TCCP Article 38.23(a) if the evidence was obtained by a police officer acting in good faith reliance upon a warrant issued by a neutral magistrate based upon probable cause. Id. art. 38.23(b). In the distinguishable case at bar, however, the good-faith exception should not be applied because as stated above, there was no finding of probable cause by the magistrate in the instant case as required under the specific language of TCCP Article 38.23(b). Id. It is well founded that an affidavit under "*Art.38.23(b)* **requires a finding of probable cause**, while [the federal good-faith exception is] more flexible in allowing [an] officer's belief in probable cause [to be] reasonable. Thus, we must direct our attention to the validity of the warrant and affidavit without recourse to any 'good faith' exception to the warrant requirement." Curry v. State, 808 S.W.2d 481, 482 (Tex. Crim. App. 1991)(alteration in original)(citations omitted)(emphasis added).

The search warrant for Appellant's residence was wholly lacking of any information to support an independent judgment that probable cause existed for the issuance of same. Gordon, 801 S.W.2d at 915-16, *quoting*, Whiteley v. Warden, 401 U.S. 560, 564 (1971)("The decisions of this Court concerning Fourth Amendment

13

probable-cause requirements before a warrant for either arrest or search can issue require that the judicial officer issuing such a warrant be supplied with **sufficient information** to support an **independent** judgment that probable cause exists for the warrant")(emphasis added); TEX. CODE CRIM. PROC. ANN. art. 38.23(b) (Vernon 2012). Therefore, the good-faith exception is not applicable in the case at bar. Id.

## CONCLUSION

Littlejohn's own testimony supports a finding of no probable cause to justify the arrest of Appellant for possession of marijuana and the subsequent procurement of a search warrant for Appellant's residence where marijuana was later discovered. In the alternative, if the initial detention was based on reasonable suspicion, said detention exceeded its scope and became a full blown arrest based on the totality of the circumstances and the record before this Honorable Court. Therefore, the evidence obtained subsequent to said illegal arrest must be suppressed.

An affidavit in support of a search warrant is inadequate if it fails to disclose facts which would enable the magistrate to ascertain that the event upon which probable cause was founded was closely related to the time of the issuance of the search warrant to justify a finding of probable cause for same. Because the officer's affidavit failed to provide the time of day necessary for the issuance of a search warrant for Appellant's residence relating

14

to the offense of Possession of Marijuana under 2 ounces, the evidence obtained subsequent to said illegal search must be suppressed.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Appellant prays this Honorable Court grant this Petition for Discretionary Review and after a full review hereon reverse the judgment of the trial court and remand said case for entry of an Order suppressing all illegally obtained tangible evidence after the illegal detention of Appellant for the reasons stated herein and in accordance with the Fourth Amendment of the United States Constitution, Article I, section 9 of the Texas Constitution and Article 38.23 of the Texas Code of Criminal Procedure and for any other relief Appellant may be justly entitled.

RESPECTFULLY SUBMITTED,

L. PATRICK DAVIS
SBN 00795775
115 N. Henderson Street
Fort Worth, Texas    76102
(817)870-1544
(817)870-1589    fax

ATTORNEY FOR APPELLANT/PRO BONO

15

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was hand-delivered to Hon. Joe Shannon, Jr., Tarrant County District Attorney, 401 W. Belknap Street, Fort Worth, Texas 76196, and sent via certified mail to Hon. Matthew Paul, State Prosecuting Attorney, P.O. Box 12405, Austin, Texas 78711 on December 29, 2014.



## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I, L. Patrick Davis, hereby state that this document contains approximately 3,548 words exclusive of that contained in the Appendix and those sections inapplicable to said Rule.

16

A



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00016-CR

JOSEY WALES PARKS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

----------

FROM COUNTY CRIMINAL COURT NO. 9 OF TARRANT COUNTY
TRIAL COURT NO. 1263051

----------

## MEMORANDUM OPINION[1]

----------

## I. Introduction

Crowley police officers detained Appellant Josey Wales Parks while they sought a search warrant for his home, where they subsequently discovered marijuana. Parks pleaded guilty to possession of marijuana, two ounces or less, in exchange for six months of deferred adjudication community supervision, a

---

[1]See Tex. R. App. P. 47.4.

fine, and court costs after the trial court denied his motion to suppress. Parks appeals the denial of his motion to suppress in two points pertaining to the search warrant affidavit and his detention. We affirm.

## II. Motion to Suppress

When the trial court determines probable cause to support the issuance of a search warrant, there are no credibility determinations. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Instead, the trial court is constrained to the four corners of the affidavit. *Id.* Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination "so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331 (quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980)); *see Swearingen*, 143 S.W.3d at 811; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010).

Further, we may not analyze the affidavit in a hyper-technical manner; rather, we must interpret the affidavit "in a commonsensical and realistic manner, recognizing that the magistrate may draw reasonable inferences. When in doubt,

2

we defer to all reasonable inferences that the magistrate could have made." *McClain*, 337 S.W.3d at 271. Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location. *Id.* at 272. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012). As long as the magistrate had a substantial basis for concluding that probable cause existed, the magistrate's probable cause determination will be upheld. *McLain*, 337 S.W.3d at 271.

We have summarized the following pertinent information from Investigator Wallace's search warrant affidavit, which he signed on September 20, 2011:

- In the two months prior to the search warrant application on September 20, 2011, the Crowley Police Department received up to twenty reports of burglary and thefts in Parks's neighborhood.

- "On or about September 19, 2011, . . . Parks . . . did then and there commit the offense of Possession of Marijuana . . . in that he did then and there possess marijuana inside his residence . . . ."

- On September 19, 2011, Lachelle Henton advised Crowley Police Officer McCurtain that her juvenile son T.V. had been stealing property from residences in their neighborhood and trading the stolen property with Parks, who lived across the street from them, in exchange for marijuana.

- On September 19, 2011, Henton went to Parks's house to confront Parks about providing T.V. with marijuana. He admitted to her that he provided marijuana to T.V. in exchange for property, and she admonished Parks to stay away from her son and to stop providing him with marijuana.

- On September 20, 2011, Officer McCurtain told Investigator Wallace what Henton had told him about stolen property possibly being located at Parks's residence.

- On September 20, 2011, Officers McCurtain and Littlejohn went to Parks's residence and conducted a "knock and talk" with Parks. Parks told them about his friendship with T.V. but denied providing T.V. with marijuana or receiving any property from him.

- Officer McCurtain, who was previously employed as a narcotics interdiction officer and due to his training and experience had become familiar with the odor of fresh marijuana, and Officer Littlejohn reported that they detected the overwhelming odor of fresh marijuana coming from inside Parks's residence while they talked with Parks in the open doorway of his residence.

- Officer Littlejohn began surveillance of Parks's residence, saw an unidentified female enter the residence with a key, and saw Parks transport several boxes with unknown contents from a truck parked in the driveway into the residence. "It was determined at that point to detain . . . Parks and the female in the residence in order to protect any evidence from destruction."

- Officer Littlejohn approached Parks outside the residence, detained him, secured him in the back of his patrol unit, and gave him his *Miranda* warnings. Parks then waived his rights and agreed to answer questions.

- Officer Littlejohn knocked on the door, detained the female who answered it, and placed her in the back of Officer McCurtain's patrol unit. She waived her rights, agreed to answer questions, and told Officer McCurtain that she had an amount of marijuana in a green bag that was located just inside the residence by the doorway.

- Officer Harold Cussnick with the Fort Worth Police Department K-9 Unit was asked to come to the residence; his K-9 partner Kelev had a positive alert to the presence of narcotics at the residence's front door.

The face of the warrant reflects that the magistrate signed it at 11:33 a.m. on September 20, 2011.

At the suppression hearing, Officer Littlejohn testified that he and Officer McCurtain decided to conduct a "knock and talk" with Parks after receiving T.V.'s mother's credible tip regarding her son's crime spree and his exchanging the

4

stolen goods for marijuana with Parks, a neighbor across the street.[2] They went to Parks's home at some point in the morning between 8:00 a.m. and "before lunch" and spoke with Parks for around five minutes. Both officers detected a strong odor of marijuana coming from inside the house when Parks opened the front door. Parks told them that he did not want to speak with them and that "he knew the kid but, you know, he wasn't doing any of the buying" of the stolen property.

After conversing with Parks, the officers returned to the police station and talked with Investigator Wallace. Officer Littlejohn said that Investigator Wallace told them to return to Parks's house and make sure nobody left while he procured a search warrant for the house. After returning to Parks's house, the officers saw Parks leave the house to ride his bike and walk his dog. Officer Littlejohn relayed this information to Investigator Wallace, who told him to detain Parks. Officer Littlejohn testified that he approached Parks, took Parks's cell phone, and placed him in the back of his patrol car[3] and that Parks was detained from concern that he might otherwise destroy the evidence. While Parks was detained, a Fort Worth K-9 unit arrived and alerted outside the home to the

---

[2]See Florida v. Jardines, 133 S. Ct. 1409, 1416 (2013) (stating that a police officer not armed with a warrant may approach a home and knock because that is no more than any private citizen might do).

[3]Officer Littlejohn further testified that he did not activate the lights on his patrol car and that he did not handcuff Parks before placing him in the patrol car.

presence of drugs.[4] Officer Littlejohn testified that Parks was detained for thirty minutes to an hour before the search warrant was executed and that police recovered a stolen Wii game console and a small amount of marijuana from Parks's residence.

Investigator Wallace testified that he had sent Officers Littlejohn and McCurtain back to the residence to prevent Parks from removing or destroying the evidence and that he asked for a K-9 unit to be sent out. Investigator Wallace said that he waited to hear the results from the K-9 unit before he started drafting the search warrant and that it usually took him thirty to forty-five minutes to "bang out a warrant like this."

On cross-examination, Investigator Wallace stated that the search warrant affidavit contained a typographical error in that the first statement in the affidavit recited that Parks had committed possession of marijuana on or about September 19, 2011. Investigator Wallace testified that he had intended for that date to read September 20, 2011,[5] and that he had based the affidavit on the September 20, 2011 events—the "knock and talk" at Parks's residence, the

---

[4]*Cf. Jardines*, 133 S. Ct. at 1417–18 ("The government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment."). Parks does not argue that *Jardines* retroactively applies to the K-9's alert; he does not address the alert at all.

[5]Officer Littlejohn stated that he thought the police had arrested Parks for possession on September 19, but he also agreed that the conversation with T.V.'s mother had occurred on September 19 before the September 20 "knock and talk" and the arrest.

marijuana odor smelled by the officers, and the K-9 unit's alert. Investigator Wallace further testified that he arrived at the residence around noon to conduct the search.

The trial court recited into the record that the two references to September 19 in the affidavit were typographical errors;[6] that all of the events occurred on September 20, 2011; and that based on the smell of marijuana that the officer recognized based on his training and experience, there was sufficient probable cause to believe that there were potential controlled substances in the house. The trial court adopted the affidavit's factual recitation as the chronology of events that led to the search warrant and expressly stated that the detention did not lead to recovery of any evidence that was sought to be used against Parks. And it concluded that the search warrant led to the recovery of the evidence at issue and that the search warrant was valid on its face because, despite the typographical errors, it was supported by probable cause.

In his second point, Parks complains that the trial court erred by denying his motion to suppress because the affidavit failed to state what time Officer

---

[6]As set out above in our summary of the affidavit's contents, there were actually three references to September 19; only one of them—the allegation that Parks committed possession of marijuana "on or about September 19, 2011"—appears to be incorrect in light of the record. We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case even if the trial court gave the wrong reason for its ruling. *State v. Stevens*, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007); *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 974 (2004).

Littlejohn smelled the marijuana odor coming from his house, leaving the magistrate to guess whether drugs could still be found there.

The affidavit reflects that Henton, a named informant, spoke directly to Parks, who admitted to her that he had supplied her son with marijuana. *See Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995) (upholding the validity of a search warrant affidavit when it specified a named informant who supplied the information upon which probable cause was based and was sufficiently detailed to suggest direct knowledge on the informant's part). Further, Henton's information was corroborated by the fact that the officers then went to Parks's residence and smelled an "overwhelming odor of fresh marijuana" coming from inside the house. The affidavit also reveals that through his training and experience as a narcotics interdiction officer, Officer McCurtain was familiar with the odor of fresh marijuana. Finally, the affidavit indicates that a female inside the residence told the officers that there was marijuana inside Parks's residence.

The record reflects that the search warrant was issued and executed at 11:34 a.m. on September 20, 2011—the same day on which the officers detected the odor of fresh marijuana coming from inside Parks's residence. Further, the affidavit stated that the Crowley Police Department had received "up to twenty reports of burglary" in Parks's neighborhood during the previous two months. In conjunction with Henton's tip that her son had been stealing from his neighbors' homes and trading the stolen goods to Parks in exchange for marijuana, the

8

magistrate could have reasonably inferred that Parks had been engaging in continuous drug transactions during the two months leading up to the search of his residence. *See Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012) ("We have suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence."), *cert. denied*, 133 S. Ct. 370 (2012); *Thiboult v. State*, No. 02-06-00449-CR, 2008 WL 45757, at *2 (Tex. App.—Fort Worth Jan. 3, 2008, pet. ref'd) (mem. op., not designated for publication) (noting that when the affidavit recites facts indicating activity of a protracted and continuous nature such as a course of conduct, the passage of time between the occurrence of events set out in the affidavit and the time the search warrant was issued becomes less significant).

We defer to all reasonable inferences that the magistrate could have made, and here, the magistrate could have determined that the information was still sufficiently fresh to issue the search warrant without the specific time that the officers smelled the marijuana pinpointed in the affidavit. *See McLain*, 337 S.W.3d at 272; *cf. Crider v. State*, 352 S.W.3d 704, 708–11 (Tex. Crim. App. 2011) (requiring a specific time in a DWI search-warrant affidavit for blood evidence due to alcohol's dissipation from bloodstream). Therefore, we conclude that the magistrate had a substantial basis for determining that sufficient probable cause existed to issue the search warrant. *See Duarte*, 389 S.W.3d at 354–55; *McLain*, 337 S.W.3d at 271. We overrule Parks's second point.

9

In his first point, Parks argues that his detention was an arrest without probable cause that led to the search warrant's procurement. Parks sought suppression of all tangible evidence seized from his residence and any of his statements. The record reflects that his statements, if any, were not offered or admitted into evidence, and it supports the trial court's conclusion that the other evidence was recovered pursuant to the search warrant, which we have already concluded was properly supported by probable cause.[7] Therefore, even assuming that the seizure itself was unlawful, because there was no evidence resulting from the detention for the trial court to suppress, we overrule Parks's first point. See Tex. Code Crim. Proc. Ann. art. 38.23(a) (West 2005).

### III. Conclusion

Having overruled both of Parks's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, DAUPHINOT, and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 18, 2014

---

[7]Parks does not explain how the detention could have led to the search warrant's procurement when, as set out above, the search warrant application was based primarily on the tip from T.V.'s mother, the fresh marijuana odor, and other circumstances that led to Parks's detention while the police pursued the warrant.