# PD-1641-15

PD-1641-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/18/2015 9:24:13 AM
Accepted 12/19/2015 9:48:52 AM
ABEL ACOSTA
CLERK

No. _____

In the

# Texas Court of Criminal Appeals

at Austin

———————◆———————

No. 01-11-00572-CR
In the Court of Appeals for the
First District of Texas
at Houston

———————◆———————

# BRADLEY RAY MCCLINTOCK

*Appellant*

V.

# THE STATE OF TEXAS

*Appellee*

———————◆———————

# STATE'S PETITION FOR DISCRETIONARY REVIEW

———————◆———————

FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

DEVON ANDERSON
District Attorney
Harris County, Texas

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

AARON BURDETTE
MICHELE ONCKEN
Assistant District Attorneys
Harris County, Texas

Harris County Criminal Justice Center
1201 Franklin, Suite 600
Houston, Texas 77002
Tel.: 713.274.5826

## STATEMENT REGARDING ORAL ARGUMENT

In light of the law in Texas prior to the recent Supreme Court's opinion *Florida v. Jardines*, this case presents the issue of whether the First Court of Appeals erroneously failed to apply *Davis v. United States*, dictating there can be no exclusion of innocent police conduct "when binding appellate precedent specifically authorizes a particular police practice" that might later be found unconstitutional. The undersigned attorney would be delighted to present oral argument if this Court would find it helpful.

# IDENTIFICATION OF THE PARTIES

Pursuant to TEX. R. APP. P. 38.2(a)(1)(A), a complete list of the names of all interested parties is provided below:

*Counsel for the State:*

**Devon Anderson** — District Attorney of Harris County

**Bridget Holloway** — Assistant District Attorney on appeal

**Aaron Burdette** — Assistant District Attorney at hearing

**Michele Oncken** — Assistant District Attorney at hearing

*Appellant or criminal defendant:*

**Bradley Ray McClintock**

*Counsel for Appellant:*

**Norman Silverman** — Counsel on appeal and at hearing

*Trial Judge:*

**Honorable Jeannine Barr** — Presiding Judge

# TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ....................................................................... i

IDENTIFICATION OF THE PARTIES .................................................................................... ii

TABLE OF CONTENTS ......................................................................................................... iii

INDEX OF AUTHORITIES ................................................................................................... iv

STATEMENT OF THE CASE ................................................................................................. 1

STATEMENT OF THE PROCEDURAL HISTORY ................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 4

STATE'S TWO GROUNDS FOR REVIEW ............................................................................. 6

REASONS FOR GRANTING REVIEW.................................................................................... 7

FIRST GROUND FOR REVIEW............................................................................................. 8

> Does the United State Supreme Court's exception to the exclusionary rule, held under *Davis v. United States*, 131 S.Ct. 2419 (2001), apply to Texas' exclusionary rule?

ARGUMENT................................................................................................................. 8

SECOND GROUND FOR REVIEW....................................................................................... 13

> If the United States Supreme Court's *Davis* exception to the exclusionary rule, or at least the purpose behind it, applies to Texas' exclusionary rule, the First Court of Appeals erred in excluding evidence obtained legally under binding authority at the time the search warrant was issued.

ARGUMENT................................................................................................................. 13

PRAYER ............................................................................................................................. 17

CERTIFICATE OF SERVICE AND WORD LIMIT COMPLIANCE............................................ 18

# INDEX OF AUTHORITIES

CASES

*Curry v. State,*
    808 S.W.2d 481 (Tex. Crim. App. 1991) ................................................................ 11, 12

*Davis v. United States,*
    131 S.Ct. 2419 (2011) .................................................................................................. 7, 8, 10

*Florida v. Jardines,*
    133 S.Ct. 1409 (2013) ............................................................................................. 1, 13, 14, 15

*Illinois Caballes,*
    543 U.S. 405 (2005) ...................................................................................................... 13

*Jardines v. State,*
    73 So.3d 34 (Fla. 2011) ................................................................................................. 14

*Kyllo v. United States,*
    533 U.S. 27 (2001) ......................................................................................................... 13

*McClintock v. State,*
    __ S.W.3d __, No. 01-11-00572-CR, 2015 WL 6851826
    (Tex. App. —Houston [14th Dist.] Nov. 5, 2015) (brief on remand) ............ passim

*McClintock v. State,*
    405 S.W.3d 277 (Tex. App. —Houston [1st Dist.] 2013),
    *rev'd* __S.W.3d__, 2014 WL 4843959 (Tex. Crim. App. Oct. 1, 2014) .......................... 1

*McClintock v. State,*
    444 S.W.3d 15 (Tex. Crim. App. 2014) ........................................................................ 2

*Miles v. State,*
    241 S.W.3d 28 (Tex. Crim. App. 2007) ........................................................................ 9

*Porter v. State,*
    93 S.W.3d 342
    (Tex. App. —Houston [14th Dist.] 2002 pet. ref'd) ................................................... 13

*Rodriguez v. State,*
106 S.W.3d 224
(Tex. App. —Houston [1st Dist.] 2003 pet. ref'd)......................................13

*Romo* v. State,
106 S.W.3d 224
(Tex. App. —Houston [1st Dist.} 2003, pe. ref'd)......................................14

*State v. Daugherty,*
931 S.W.3d 268 (Tex. Crim. App. 1996)......................................11

*State v. Jackson,*
435 S.W.3d 819
(Tex. App. —Eastland 2014, pet. granted Oct. 8, 2014) ......................................16

*State v. Rabb,*
920 So.3d 1175 (Fla. 4th DCA 2006) ......................................14

*Taylor v. State,*
419 S.W.3d 520
(Tex. App. —Amarillo 2013, no pet.)......................................16

*United States v. Jones,*
132 S.Ct. 945 (2012)......................................13

*Wehrenberg v. State,*
416 S.W.3d 458 (Tex. Crim. App. 2013)......................................10

## STATUTES

Tex. Code Crim. Proc. Ann.
art. 38.23(a) (West 2012)..........................................................................14

Tex. Code Crim. Proc. Ann.
art. 38.23(b) (West 2012) ............................................................. 10, 12, 14

## RULES

Tex. R. App. P. 38.2(a)(1)(A) ........................................................................ii

Tex. R. App. P. 66.3(c).................................................................................7

Tex. R. App. P. 66.3(e)................................................................................7

Tex. R. App. P. 66.3(f) ................................................................................7

Tex. R. App. P. 68.2(a) ...............................................................................3

**TO THE HONORABLE COURT OF CRIMINAL APPEALS:**

## STATEMENT OF THE CASE

Appellant, Bradley Ray McClintock, was charged by indictment with the felony of possession of marijuana after marijuana was obtained pursuant to a search warrant with evidence of a canine sniff. (CR at 7). The trial court denied appellant's motion to suppress, and appellant, thereafter, entered a plea of guilty to the lesser state jail felony offense of possession of marijuana. (CR at 25-26). Appellant was sentenced to three years deferred adjudication and assessed a $500 fine. (CR at 31). Appellant appealed the trial court's denial of his motion to suppress.

———————◆———————

## STATEMENT OF THE PROCEDURAL HISTORY

While this case was pending on appeal, the United States Supreme Court issued *Florida v. Jardines*, 133 S.Ct. 1409 (2013). The First Court of Appeals issued its opinion in this case three months later. Relying on *Jardines*, the Court concluded the search warrant was not based upon probable cause because the dog-sniff at appellant's door was unconstitutional and the rest of the warrant was insufficient to establish probable cause. *See McClintock v. State*, 405 S.W.3d 277 (Tex. App. — Houston [1st Dist.] 2013), *rev'd* 444 S.W.3d 15 (Tex. Crim. App. 2014).

This Court granted the State's following two issues on petition for discretionary review on November 20, 2013:

> **First**: Under *Davis v. United States*, the First Court of Appeals erred in concluding that the probable cause supporting a search warrant issued prior to *United States v. Jones* and *Florida v. Jardines* needed to be reviewed on appeal without the canine sniff when the officers and the magistrate relied in good faith on existing good law at the time the warrant was issued.

> **Second**: The First Court of Appeals erred in finding the affidavit supporting the search warrant lacked probable cause upon excluding the canine sniff.

On October 1, 2014, this Court issued a published opinion rejecting the State's second ground for review, "albeit for reasons somewhat different than those of the court of appeals," and remanded this case back to the appellate court to consider the first ground for review. *See McClintock v. State*, 444 S.W.3d 15, 18, 20-21 (Tex. Crim. App. 2014).

After both parties filed briefs addressing the first ground, the First Court of Appeals held, in a published opinion, "that the judge-made *Davis* exception to the judge-made federal exclusionary rule does not create an exception to the Texas exclusionary rule adopted by the Texas Legislature" and reversed and remanded the case for a new trial without the evidence "that should have been suppressed." *See McClintock v. State*, __ S.W.3d __, No. 01-11-00572-CR, 2015 WL 6851826 (Tex.

2

App. —Houston [14th Dist.] Nov. 5, 2015) (brief on remand) (Appendix A). Judge E. Keyes disagreed with a published dissent, noting she "would hold, in accordance with *Davis*, that the good-faith exception to the exclusionary rule applies in this case" because "the evidence obtained by police pursuant to the search warrant issued on the basis of probable cause supplied in part by the dog-sniff search then deemed legal under binding authority." *See id.*, slip op. at 3 (Keyes, J. dissenting) (Appendix B). The State now timely files its petition for discretionary review in accordance with TEX. R. APP. P. 68.2(a).

———————◆———————

## STATEMENT OF FACTS

The Texas Department of Public Safety received information that marijuana was being grown on the second floor of a duplex at 412 W. Clay Street in Houston and began conducting surveillance. Appellant was observed going to the back of the duplex. Appellant did not, however, use either of the front two doors that led into a business on the first floor. Inside the business, accessible by only one of the two first floor front doors, there did not appear to be any stairs that led to the second floor. The windows of the second floor were blacked out with material that resembled aluminum foil and there were multiple window air conditioning units running. For several days, appellant was seen arriving early in the morning, parking in the rear of the building, before leaving a few hours later. After multiple days of surveillance, no one was ever seen using the other first floor front door. Multiple vehicles were observed parked for extended periods of time in the parking lot on occasion.

Two driveways lead to the back of the duplex to a rear parking lot with a concrete slab surface. No gates, fences, or any type of obstruction block either driveway or prevent access to the parking area behind the duplex. There was a staircase on the back of the building that led to a door on the second floor. Agent R. Arthur, the affiant, detected what he knew from his training and experience to be the odor of marijuana while on the sidewalk. The smell continued up the

driveway to the parking area in the back of the building. At this point, he requested the assistance of a narcotics canine. The canine officer and partner "Sita" walked up the stairs to the second floor back door and Sita gave a positive alert to the presence of a controlled substance. The canine officer observed a towel and plastic sealing the bottom of the back door and around the seam near the door handle. This is known to be used to "seal odors." (CR at 12-16).

A warrant, supported by an affidavit from Agent Arthur, was obtained a day later. (CR at 26). The affidavit included the following facts:

- Surveillance was set up at 412 W. Clay after receiving a tip that "marijuana was being grown inside the 2nd floor residence;"

- A business operated on the bottom floor;

- "[A]n open to the public stairway" led to upstairs on the back of the building;

- The stairs are located off a public parking area for the business;

- There are no gates, fences, or a door that blocks the stairway from the parking lot;

- A male was observed coming and going from the back of the building at hours consistent with possible narcotics activity;

- Agent Arthur smelled the odor of marijuana outside this location; and

- "Sita," who is a canine certified with the National Narcotics Detector Dog Association, gave a positive alert to the presence of marijuana, cocaine, and/or methamphetamine by the second floor doorway.

Appellant filed a motion to suppress the marijuana seized pursuant to the warrant. (CR at 16). He claimed the warrant lacked probable cause because the affidavit misrepresented the stairway as "open to the public." (CR at 17). The trial court denied appellant's motion to suppress, finding the stairs were not part of the curtilage. (RR at 17).

———————◆———————

## STATE'S TWO GROUNDS FOR REVIEW

**First:** Does the United State Supreme Court's exception to the exclusionary rule, held under *Davis v. United States*, 131 S.Ct. 2419 (2001), apply to Texas' exclusionary rule?

**Second:** If the United States Supreme Court's *Davis* exception to the exclusionary rule, or at least the purpose behind it, applies to Texas' exclusionary rule, the First Court of Appeals erred in excluding evidence obtained legally under binding authority at the time the search warrant was issued.

———————◆———————

## REASONS FOR GRANTING REVIEW

This petition for discretionary review should be granted pursuant to TEX. R. APP. P. 66.3(c) because the First Court of Appeals' published opinion in this case conflicts with the United States Supreme Court's opinion in *Davis v. United States*, 131 S.Ct. 2419, 2426–27 (2011) that dictates there can be no exclusion of police conduct "when binding appellate precedent specifically authorizes a particular police practice" that might later be found unconstitutional. This petition for discretionary review should be granted pursuant to TEX. R. APP. P. 66.3(e) because the justices of the First Court of Appeals have disagreed on a material question of law necessary to the court's decision as evidenced by the dissent in this case. Furthermore, this petition for discretionary review should be granted pursuant to TEX. R. APP. P. 66.3(f) because the First Court of Appeals' published decision greatly departs from the jurisprudence of this State regarding the application of *Davis v. United States.*

———————◆———————

## FIRST GROUND FOR REVIEW

Does the United State Supreme Court's exception to the exclusionary rule, held under *Davis* v. United States, 131 S.Ct. 2419 (2001), apply to Texas' exclusionary rule?

## ARGUMENT

The Supreme Court held in *Davis v. United States*, 131 S.Ct. 2419 (2011) that "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *See id.* at 2429. The First Court of Appeals concluded that *Davis*, however, did not apply in Texas because its exclusionary rule and good-faith exception are statutory and not judicially created like the federal rule in *Davis*. *See McClintock*, slip op. at 17-18. Justice Keyes disagreed, finding "the majority's holding is based on a misinterpretation of both the Texas exclusionary rule and its good-faith exception and the federal exclusionary rule and good-faith exception, as well as the relationship between them." *See McClintock*, slip op. at 4 (Keyes, J. dissenting).

Justice Keyes points out two errors of law in the majority's opinion. First, Article 38.23 was not created to override the federal exclusionary rule and good-faith exception devised by the United States Supreme Court for use in Fourth Amendment rulings. Texas courts have consistently followed both federal and state precedent in construing Article 38.23 (except for a conflict in the language

8

that is not at issue in this case). The majority erroneously relies on this Court's opinion in *Miles v. State*, 241 S.W.3d 28 (Tex. Crim. App. 2007) to conclude that Texas Courts may disregard the United State Supreme Court's construction of the federal exclusionary rule. *See McClintock*, slip op. at 10; slip op. at 12 (Keyes, J. dissenting). Contrary to the majority's view, however, *Miles* states that Article 38.23 "sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution." *See McClintock*, slip op. at 13 (Keyes, J. dissenting) (quoting *Miles*, 241 S.W.3d at 34). The only difference is that the Texas Legislature applied the exclusionary rule to evidence illegally seized by private individuals, which is not at issue here. *See id.* Here, the exclusion of evidence under Article 38.23(a) is based upon a claim of a Fourth Amendment violation. Where the Fourth Amendment of the United States is invoked as the basis of exclusion, the principles underlying the federal exception to the exclusionary rule should be recognized and applied. "Evidence seized in violation of the Fourth Amendment through police misconduct must be excluded, but [ ] evidence seized by the police in good faith need not be." *McClintock*, slip op. at 19 (Keyes, J. dissenting).

Second, the majority also erroneously concluded that *Davis* is in direct conflict with Texas law and that Texas law does not recognize federal cases construing the federal good-faith exception to the exclusionary rule. Article

38.23(b) provides an exception to the Texas exclusionary rule to permit evidence obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause. *See* TEX. CODE CRIM. PROC. art. 38.23(b) (West 2012). As noted by Justice Keyes, *Davis* does not conflict with that language. *See McClintock*, slip op. at 16 (Keyes, J. dissenting). The majority concluded it does by incorrectly "*assum[ing]*" the warrant at issue here was illegal when it was issued based solely on an act within it being illegal now. *See id.*, slip op. at 11 (Keyes, J. dissenting). That conclusion is directly contrary to the intent and purpose behind *Davis*. *Davis* held that a subsequent ruling by the Court that a warrantless search is constitutionally invalid does not apply retroactively to render evidence obtained in good-faith reliance on binding precedent inadmissible. *See Davis*, 131 S.Ct. at 2429. The majority, however, applied the subsequent ruling retroactively by concluding the search warrant at issue was not based upon probable cause because of the subsequent ruling. *See McClintock*, slip op. at 18; slip op. at 17-18 (Keyes, J. dissenting). Not only does the majority completely ignore *Davis*, but "this argument...is circular." *See McClintock*, slip op. at 18 (Keyes, J. dissenting).

As noted by the dissent, the majority erroneously relied on *Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013) and *State v. Daugherty*, 931 S.W.3d 268 (Tex.

10

Crim. App. 1996) in supporting its position. *Daugherty* is inapplicable because the "inevitable discovery" of *unlawfully* obtained evidence goes against the plain language of Article 38.23(b), providing a good-faith exception to "lawfully" obtained evidence only. *See McClintock*, slip op. at 20 (Keyes, J. dissenting). And, in *Wahrenberg*, this Court upheld the admissibility of evidence lawfully obtained pursuant to the federal "independent source" doctrine because the evidence was *lawfully* obtained, as required by Article 38.23. *See id.*, slip op. at 21-22 (Keyes, J. dissenting).

Under *Davis* and *Wehrenberg*, the evidence in this case was obtained *lawfully* at the time of seizure. The majority erred in retroactively applying *Jardines* and in ignoring *Davis*. The majority's opinion "vitiates the purpose of both the exclusionary rule and the good faith exception" —to deter police misconduct. *See McClintock*, slip op. at 24 (Keyes, J. dissenting).

Furthermore, the majority cites to this Court's opinion in *Curry v. State*, 808 S.W.2d 481 (Tex. Crim. App. 1991) for the proposition that this Court has held that "based on probable cause" does not include "an officer's good-faith reliance on a warrant subsequently invalidated for lack of probable cause." *See McClintock*, slip. op. at 17. In *Curry*, however, the warrant was subsequently invalidated for probable cause because it *never* contained probable cause. In fact, this Court

11

explicitly qualified its holding in *Curry* as requiring an "*initial* determination of probable cause," s*ee Curry*, 808 S.W.2d at 482 (emphasis added), which is supported by the plain wording of Article 38.23(b), that in order to apply the good-faith exception, officers must have acted in reliance upon "a warrant *issued* by a neutral magistrate based upon probable cause." *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). The majority's reliance on *Curry*, therefore, is misplaced, and its interpretation of Article 38.23(b) deprives it of its intended purpose.

The United States Supreme Court's *Davis* exception to the exclusionary rule, and the purpose behind it, should apply to the Texas' exclusionary rule. Here, a facially valid warrant was issued based upon an initial determination of probable cause. The State's first ground for review should be granted.

———————◆———————

12

## SECOND GROUND FOR REVIEW

If the United States Supreme Court's *Davis* exception to the exclusionary rule, or at least the purpose behind it, applies to Texas' exclusionary rule, the First Court of Appeals erred in excluding evidence obtained legally under binding authority at the time the search warrant was issued.

## ARGUMENT

The First Court of Appeals erred in finding the trial court abused its discretion in denying appellant's motion to suppress when both the officers and the magistrate were following the state of the law in Texas at the time the warrant was issued. The search warrant for the second floor of 412 West Clay was issued in September 2010. (Supp. CR at 20). *United States v. Jones*, 132 S.Ct. 945 (2012) was issued over a year after the search warrant was issued, and during the pendency of appellant's appeal, the United States Supreme Court issued *Jardines.* It is beyond dispute that as of September 2010, when Agent Arthur acted, precedent specifically authorized law enforcement to use a drug-detection dog to seek out illegal narcotics in an area open to the public. *See Illinois Caballes* 543 U.S. 405, 409 (2005); *Porter v. State*, 93 S.W.3d 342, 346, n. 6 (Tex. App. —Houston [14th Dist.] 2002 pet. ref'd) (interpreting *Kyllo v. United States*, 533 U.S. 27, 31–34 (2001)); *Rodriguez v. State*, 106 S.W.3d 224, 229 (Tex. App. —Houston [1st Dist.] 2003 pet. ref'd); *Romo* v. State, 106 S.W.3d 224 (Tex. App. —Houston [1st Dist.} 2003, pe.

13

ref'd).[1]  Thus, prior to the decision in *Jardines*, the use of a narcotics detection dog was not considered a "search" under precedent in Texas.

Article 38.23(a) of the Code of Criminal Procedure excludes, "evidence obtained by an officer or other person in violation of any provision of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America."  *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2012).  Article 38.23(b), however, provides a good-faith exception that allows evidence obtained in good-faith reliance on a warrant issued by a neutral magistrate based upon probable cause to be admissible.  TEX. CODE CRIM. PROC. ANN. art. 38.23(b) (West 2012).

Here, the officers did all they could do in seeking to comply with the law.  In addition to conducting surveillance, they conducted what was, at the time, a lawful dog-sniff at the door on the second floor of the suspected house.  They then sought a search warrant to search the second floor of the house.  Because the police in this case acted in objectively reasonable reliance on binding appellate precedent, the *Davis* good-faith exception should have applied.  At every step of

---

[1] Moreover, unlike here, *Davis* did not apply to *Florida v. Jardines* because binding appellate precedent in Florida, and as ultimately decided by the Supreme Court of Florida in *Jardines v. State*, was to suppress the dog-sniff.  *See Jardines v. State*, 73 So.3d 34, 38 (Fla. 2011); *see also State v. Rabb*, 920 So.3d 1175 (Fla. 4th DCA 2006) (canine sniff from outside a home to detect narcotics inside the home uses extra-sensory procedure that violates the firm line at the door of the home protected from intrusion by the Fourth Amendment).

the way, the police followed the law as they understood it at the time. Suppressing the evidence here would have no effect in discouraging police misconduct; if the appellate courts of this State failed to foresee the holding in *Jardines*, the police cannot be faulted for following the law as it was given to them. The dissent of four justices in *Jardines* indicates the police could not have known that the search would be deemed illegal. Therefore, the good-faith exception to the exclusionary rule protects the search from retroactive invalidation under *Jardines*. To find otherwise, would mean that the operation of the good-faith exclusionary rule would not serve its remedial purpose.

Furthermore, Article 38.23(a) bars the admission of illegally-obtained evidence. The State, however, was not seeking to introduce the results of the warrantless dog-sniff, it was seeking to introduce the items discovered inside the house pursuant to a legally issued warrant. Though it is generally the case that illegally-obtained evidence cannot provide the probable cause for a warrant, the State believes that the convergence of the state and federal good-faith exceptions allows it in this case. The Texas good-faith exception, by its terms, does not bar the consideration of illegally obtained evidence in the probable cause analysis; that

is a judicial construct, and like all judicial constructs it can be modified as policy demands.[2]

The First Court of Appeals erred in excluding the dog-sniff because it was conducted pursuant to established precedent at the time the warrant was issued. The State's second ground for review should be granted.

——————◆——————

---

[2] *See* e.g., *Taylor v. State*, 419 S.W.3d 520 (Tex. App. —Amarillo 2013, no pet.) (at the time a GPS unit was placed on car, it was not considered a search that required probable cause; thus, the evidence seized pursuant to use of the GPS unit would not be subject to the exclusionary rule because "the officers acted in reasonable reliance on federal precedent in the majority of the federal circuit courts of appeal, including the Fifth Circuit"), *but see State v. Jackson*, 435 S.W.3d 819 (Tex. App. —Eastland 2014), *rev'd on other ground*, 464 S.W.3d 724 (Tex. Crim. App. 2015) (also argued that the placement of a GPS unit on his car prior to *Jones* was now an illegal search and tainted the evidence obtained as the result of its use; the court of appeals held that "an officer's good faith reliance on the law or existing precedent is not recognized as an exception to the Texas exclusionary rule;" finding Article 38.23(b) does not state the exclusionary rule applies to "an officer's good faith reliance on the law or existing precedent.").

## PRAYER

The State respectfully requests this Court grant the State's petition for discretionary review and reverse the appellate court's suppression of the evidence obtained via a valid search warrant supported by evidence admissible under binding appellate authority when it was issued.

DEVON ANDERSON
District Attorney
Harris County, Texas


/s/ *Bridget Holloway*

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
1201 Franklin Suite 600
Houston, Texas 77002
(713) 755-5826
Texas Bar No. 24025227
holloway_bridget@dao.hctx.net

## <u>CERTIFICATE OF SERVICE AND WORD LIMIT COMPLIANCE</u>

This is to certify:  (a) that the word count of the computer program used to prepare this document reports that there are 3985 words in the document; and (b) that the undersigned attorney requested that a copy of this document be served to appellant's attorney, and the State Prosecuting Attorney, via TexFile at the following emails on December 18, 2015:

Norman J. Silverman
Attorney for Appellant
Email:  lawyernorm@msn.com

Lisa C. McMinn
State Prosecuting Attorney
Email:  Lisa.McMinn@SPA.texas.gov

/s/ *Bridget Holloway*

BRIDGET HOLLOWAY
Assistant District Attorney
Harris County, Texas
1201 Franklin, Suite 600
Houston, Texas  77002
(713) 755-5826
Texas Bar No.  24025227
holloway_bridget@dao.hctx.net



**APPENDIX A**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-11-00572-CR

_____

**BRADLEY RAY MCCLINTOCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd Criminal District Court**
**Harris County, Texas**
**Trial Court Case No. 1280089**

---

## OPINION ON REMAND

This case was remanded to us by the Court of Criminal Appeals. *McClintock v. State*, 444 S.W.3d 15 (Tex. Crim. App. 2014). That Court affirmed our initial analysis and remanded to address in the first instance an issue first raised in the State's petition for discretionary review. On remand, we must determine whether,

under the facts of this case, an officer's good-faith reliance on binding appellate precedent operates as an exception to both the federal exclusionary rule and Texas exclusionary statute. *See id.* at 20–21.

We conclude that the judge-made *Davis* exception to the judge-made federal exclusionary rule does not create an exception to the Texas exclusionary rule adopted by the Texas Legislature. Because the search warrant in this case was not based on probable cause, the Texas rule requires that the illegally obtained evidence be suppressed, and a new trial is required.

## Background

Appellant Bradley McClintock appealed his conviction for possession of marijuana, arguing that evidence seized from his apartment pursuant to a search warrant should have been suppressed. In the supporting affidavit used to procure the warrant, Department of Public Safety Officer R. Arthur stated the following:

> Affiant received information that marijuana was being grown inside the 2nd floor residence located at 412 West Clay, Houston, Harris County, Texas. Affiant went to this location and found it to be located in Harris County, Texas. . . . Affiant and other peace officers with the Texas Department of Public Safety set up surveillance on this location. During surveillance of this location over the last week of the making of this affidavit, affiant observed the following: the downstairs of this location appears to be a business, there is an open to the public stairway that leads to the upstairs. . . . This stairway is open to the public in that it could easily be where a delivery person could or would make deliveries to the upstairs residence area. Affiant has observed a male individual come and go from this location, at hours well before and after the business hours of the business on the first

2

floor. Based on training and experience, Affiant found this to be consistent with possible narcotics activity.

On September 29, 2010, Affiant approached this location. At this time, from the outside of this location, Affiant could smell, what Affiant knows from training and experience to be, marijuana. On this same date at approximately 11:30 pm, Affiant requested the assistance of a narcotics canine at this location. Affiant spoke with and obtained the assistance of Houston Police Department Canine Officer Kristin Uhlin and her canine partner "Sita". Officer Uhlin stated that she and "Sita" are currently certified by the National Narcotics Detector Dog Association, # 48761, for the detection of the odors of marijuana, cocaine and methamphetamine. Affiant observed Officer Uhlin and "Sita" to deploy up to the second floor doorway using the open to the public stairway described above. Officer Uhlin stated to Affiant that at the doorway leading into the second floor of this location, "Sita" gave a positive alert at this location indicating the presence of one or more of the above named controlled substance.

On the basis of the Supreme Court's decision in *Florida v. Jardines*, 133 S. Ct. 1409 (2013), issued while the appeal was originally pending in this court, we held that the warrantless dog sniff conducted at McClintock's back door was unlawful. *McClintock*, 405 S.W.3d at 283–84. Setting aside that information, we concluded that the remainder of the affidavit was insufficient to establish probable cause necessary for a warrant. *Id.* at 284–88. We accordingly reversed the denial of McClintock's motion to suppress and remanded for a new trial. *Id.* at 288–89.

The State petitioned the Court of Criminal Appeals for review of our decision. In its first ground for review, the State asserted that Officer Arthur conducted the dog sniff in good-faith reliance on previously binding appellate precedent that held that a canine drug sniff did not constitute a "search" for Fourth

3

Amendment purposes. *McClintock*, 444 S.W.3d at 18. Relying on the Supreme Court's decision in *Davis v. United States*, 131 S. Ct. 2419 (2011), the State argued for the first time that pursuant to a good-faith exception to the exclusionary rule, the dog-sniff evidence should not be excluded. In its second ground for review the State argued, alternatively, that this court erred in its determination that the remainder of the affidavit could not furnish the probable cause necessary to support a search warrant. *McClintock*, 444 S.W.3d at 18.

The Court of Criminal Appeals granted the State's petition and considered both grounds for review. In a published opinion, the Court agreed with our determination that the remainder of the warrant affidavit did not clearly establish probable cause. *McClintock*, 444 S.W.3d at 19–20. Nevertheless, the Court vacated our judgment and remanded the case for consideration of the State's new argument regarding a good-faith exception to the federal and Texas exclusionary rules. *Id.* at 20–21. The Court observed that "the issue of the proper application of the exclusionary rule to the facts of this case is not remotely clear cut," and that, if its resolution of the issue is eventually needed, it "would benefit from a carefully wrought decision from the court of appeals." *Id.*

## Analysis

The question presented at this stage of the appeal is whether an exception applied by federal courts to the exclusionary rule, established in *Davis v. United*

4

*States*, also should apply in this case to permit reliance on illegally obtained drug evidence. This question requires us to interpret and apply the Texas exclusionary statute, Code of Criminal Procedure Article 38.23. Before turning to the parties' arguments about whether the exception applies in this case, we first review the scope of the exception established in *Davis*.

## I.    *Davis v. United States*

In *Davis*, the police arrested petitioner Willie Davis for giving a false name during a routine traffic stop. *Davis*, 131 S. Ct. at 2425. After the officers had handcuffed Davis and secured the scene, they searched his vehicle and found a gun. *Id.* As a result, Davis was indicted on charges of being a felon in possession of a firearm. *Id.* at 2425–26. The officers had conducted the search of the vehicle in reliance on the Eleventh Circuit's interpretation of *New York v. Belton*, 453 U.S. 454, 101 S. Ct. 2860 (1981). *Davis*, 131 S. Ct. at 2425–26. Davis acknowledged that then-existing precedent in the Eleventh Circuit allowed for the search of his vehicle, but he still preserved the issue and appealed. *Id.* at 2426.

As Davis's appeal was pending, the Supreme Court decided *Arizona v. Gant*, 556 U.S. 332, 129 S. Ct. 1710 (2009). The new, two-part rule of *Gant* held that a warrantless automobile search incident to arrest is constitutional only when (1) the arrestee is within reaching distance of the vehicle during the search, or (2) the police have reason to believe that the vehicle contains evidence relevant to the

crime of arrest. *Id.* at 332, 129 S. Ct. at 1712. Applying the new rule from *Gant*, the Eleventh Circuit concluded that the vehicle search incident to Davis's arrest was unconstitutional. *See Davis*, 131 S. Ct. at 2426. Nevertheless, the Eleventh Circuit declined to apply the exclusionary rule to the illegally obtained evidence based upon the officers' good-faith reliance on judicial precedent. *See id.*

The Supreme Court granted certiorari and considered "whether to apply the exclusionary rule when the police conduct a search in objectively reasonable reliance on binding judicial precedent." *Id.* at 2428. The Court acknowledged that *Gant* applied retroactively to the case and that the search was unlawful, despite the fact that the officers' conduct was not culpable. *Id.* at 2428, 2431. Rather than viewing the issue as one of retroactivity, the Court based its analysis on the "good faith" test it established in *United States v. Leon*, 468 U.S. 897 (1984). *Davis*, 131 S. Ct. at 2427–28.

The Court recognized that exclusion of evidence "exacts a heavy toll on both the judicial system and society at large," but stated that the rule should nonetheless be applied as a "last resort." *Id.* at 2427. The "sole purpose" of the rule is to "deter future Fourth Amendment violations." *Id.* at 2426. Accordingly, exclusion is appropriate only when its "deterrence benefits" outweigh its "heavy costs." *Id.* at 2427. These circumstances exist when the police exhibit "deliberate, reckless, or grossly negligent disregard for Fourth Amendment rights." *Id.*

6

Applying the deterrence principles to the facts of the case, the Court concluded that exclusion of evidence obtained in reliance on binding judicial precedent would not be appropriate:

> About all that exclusion would deter in this case is conscientious police work. Responsible law-enforcement officers will take care to learn what is required of them under Fourth Amendment precedent and will conform their conduct to these rules. But by the same token, when binding appellate precedent specifically *authorizes* a particular police practice, well-trained officers will and should use that tool to fulfill their crime-detection and public-safety responsibilities. An officer who conducts a search in reliance on binding appellate precedent does no more than act as a reasonable officer would and should act under the circumstances. The deterrent effect of exclusion in such a case can only be to discourage the officer from doing his duty.
>
> That is not the kind of deterrence the exclusionary rule seeks to foster. We have stated before, and we reaffirm today, that the harsh sanction of exclusion should not be applied to deter objectively reasonable law enforcement activity.

*Id.* at 2429 (quotations omitted). Thus the Court established a new exception to the federal exclusionary rule: "Evidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.*

The State argues at the outset that the *Davis* exception should apply in this case because Officer Arthur acted in objectively reasonable good-faith reliance on pre-*Jardines* precedent when he conducted the unlawful dog-sniff search. In response, McClintock contends that we cannot apply the *Davis* exception to this

case without first affording him a chance to develop a factual record regarding the issue of good faith. *See State v. Esparza*, 413 S.W.3d 81, 89 (Tex. Crim. App. 2013) (refusing to uphold trial court's ruling under an alternative theory of law applicable to the case when the appellant did not have the opportunity to develop a factual record on that issue). He also responds that no precedent in the relevant jurisdiction specifically authorized the search, which he contends is a necessary condition to applying the *Davis* exception.[*] *See Davis*, 131 S. Ct. at 2429; *see also*

---

[*] Numerous federal courts of appeals have addressed how explicit or settled the appellate precedent must be to trigger the *Davis* exception. A panel of the Third Circuit adopted a strict rule, holding that the precedent must be from within the Circuit and specific to the facts at hand. *United States v. Katzin*, 732 F.3d 187, 210 (3d Cir. 2013). That panel's decision was vacated, however, and after rehearing the appeal *en banc* the court rejected such a narrow reading of *Davis*:

> Stated as a syllogism, if binding appellate precedent specifically authorizes the precise conduct under consideration, then it will likely be binding appellate precedent upon which police can reasonably rely under *Davis*. However, this does not make the reverse syllogism true, namely, that if a case is binding appellate precedent under *Davis*, then it must specifically authorize the precise conduct under consideration. *Davis*' holding is broader: "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule."

*United States v. Katzin*, 769 F.3d 163, 176 (3d Cir. 2014) (en banc), *cert. denied*, 135 S. Ct. 1448 (2015). Other courts have also rejected the contention that "binding appellate precedent" requires precedent within the Circuit and specific to the facts at hand, instead focusing on whether reliance on a body of law is objectively reasonable. *See United States v. Brown*, 744 F.3d 474, 478 (7th Cir. 2014); *United States v. Stephens*, 764 F.3d 327, 337 (4th Cir. 2014), *cert. denied*, 83 U.S.L.W. 3860 (U.S. Oct.

8

*id.* at 2435 ("This case does not present the . . . question [of] whether the exclusionary rule applies when the law governing the constitutionality of a particular search is unsettled.") (Sotomayor, J., concurring in the judgment).

But we need not address the parties' arguments about whether Officer Arthur acted with objective good-faith reliance on binding precedent if *Davis* does not create a valid exception to the Texas exclusionary statute. If good-faith reliance on binding appellate precedent is not a valid exception to the Texas exclusionary statute, then we must remand this cause to the trial court for a new trial without the evidence that should have been suppressed.

## II.   Application of the Texas exclusionary statute

Both the U.S. and Texas constitutions protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Similarly, the Texas Constitution ensures that people "shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches." TEX. CONST. art. I, § 9. Neither constitutional provision prescribes a remedy to be

---

5, 2015); *United States v. Aguiar*, 737 F.3d 251, 261 (2d Cir. 2013). Nevertheless, precise rules about when reliance on appellate precedent is objectively reasonable are difficult to ascertain. *See Brown*, 744 F.3d at 478 ("There is legitimate debate about whether precedent from Circuit A could be deemed 'binding' (for the purpose of *Davis*) when the search occurs in Circuit B, where the issue remains unresolved.").

applied when a person's rights under the provision are violated. *See Davis*, 131 S. Ct. at 2426 ("The [Fourth Amendment] says nothing about suppressing evidence obtained in violation of this command."); *Perez v. State*, 11 S.W.3d 218, 223 (Tex. Crim. App. 2000) ("Whether a violation of [Article 1, Section 9] (e.g. an unreasonable search) results in the suppression of evidence obtained as a result of that violation (i.e. employment of an exclusionary rule) is a separate, collateral issue not encompassed by the right granted in that constitutional provision.") (Keller, J., concurring in the judgment); *see also Welchek v. State*, 247 S.W. 524, 528–29 (Tex. Crim. App. 1922).

Federal courts enforce a judge-made exclusionary rule to "compel respect for the constitutional guaranty." *Elkins v. United States*, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444 (1960). The federal rule harbors several exceptions for police conduct that was conducted in reasonable reliance on a facially valid source of legal justification. *See Davis*, 131 S. Ct. at 2428–29 (reliance on subsequently invalidated binding appellate precedent); *Illinois v. Krull*, 480 U.S. 340, 350, 107 S. Ct. 1160, 1167 (1987) (reliance on a subsequently invalidated statute); *United States v. Leon*, 468 U.S. at 922–24, 104 S. Ct. at 3420–21 (reliance on subsequently invalidated warrant).

In Texas, however, the exclusionary rule is not merely a judicial creation. It was enacted by the Legislature. *See* TEX. CODE CRIM. PROC art. 38.23; *Miles v.*

*State*, 241 S.W.3d 28, 33–36 (Tex. Crim. App. 2007) (explaining the history of Article 38.23 and its precursors). The Texas exclusionary statute is "broader than its federal counterpart" and is therefore more broadly protective of individual rights. *See Miles*, 241 S.W.3d at 34.

The federal constitution does not "limit the authority of the State to exercise its police power or its sovereign right to adopt in its own Constitution individual liberties more expansive than those conferred by the Federal Constitution." *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 81, S. Ct. 2035, 2040 (1980). Both the Court of Criminal Appeals and the Supreme Court of Texas have observed that "[t]he federal constitution sets the floor for individual rights; state constitutions establish the ceiling." *Heitman v. State*, 815 S.W.2d 681, 690 (Tex. Crim. App. 1991) (quoting *LeCroy v. Hanlon*, 713 S.W.2d 335, 338 (Tex. 1986)).

Texas courts thus repeatedly have refused "to blindly follow the Supreme Court's decisions interpreting the Fourth Amendment" and instead have conducted their own examination of the Texas Constitution and associated statutes. *Id.*; *see also Hulit v. State*, 982 S.W.2d 431, 436–37 (Tex. Crim. App. 1998). Such analyses do not fall afoul of the Supremacy Clause, as they do not lead to holdings about an individual's rights under federal law. *Hulit*, 982 S.W.2d at 437. Overall, "[t]he Supremacy Clause means that, in practical terms, persons will always be

11

able to avail themselves of the greater right." *Id.* Here, the statutory rights provided by Article 38.23 are greater than those provided by the federal exclusionary rule.

In relevant part, Article 38.23 provides:

(a) No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. . . .

(b) It is an exception to the provisions of subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. art. 38.23.

Notably, the statute contains an explicit exception in subsection (b) for evidence obtained in objective good-faith reliance on a warrant "based on probable cause." The Court of Criminal Appeals has refused to entertain exceptions to the Texas exclusionary rule that are not consistent with Article 38.23's text. *Compare Wehrenberg v. State*, 416 S.W.3d 458, 468 (Tex. Crim. App. 2013) (recognizing independent-source doctrine as an exception, consistent with the statute), *with State v. Daugherty*, 931 S.W.2d 268, 270 (Tex. Crim. App. 1996) (refusing to recognize inevitable-discovery doctrine, because it is inconsistent with the statute). This is in accordance with the general rule that "where an express exception exists in a statute, the statute must apply in all cases not excepted." *Garcia v. State*, 829 S.W.2d 796, 800 (Tex. Crim. App. 1992).

The Court of Criminal Appeals has held that Article 38.23(a)'s use of the term "obtained" calls for the exclusion of evidence only when there is a "causal connection" between the illegal conduct and the acquisition of the evidence. *Wehrenberg*, 416 S.W.3d at 468. Consequently, doctrines that exempt evidence from exclusion are consistent with the statute only when they do not involve such a causal connection. *See id.* at 469–70; *Johnson v. State*, 871 S.W.2d 744, 750 (Tex. Crim. App. 1994). When a causal connection between the illegal conduct and the acquisition of evidence is present, the evidence has been "obtained" in violation of the law, and the evidence must be excluded under Article 38.23 regardless of any exception applied under federal law. *See Daugherty*, 931 S.W.2d at 271; *accord Howard v. State*, 617 S.W.2d 191, 193 (Tex. Crim. App. 1979) (op. on reh'g) (declining to adopt exception for good-faith reliance on a subsequently invalid statute).

The *Davis* exception assumes a causal connection and thus cannot be applied under Article 38.23(a). The *Davis* doctrine involves illegal police conduct that directly causes the acquisition of the evidence. *See Davis*, 131 S. Ct. at 2430–32 (clarifying that the Court's retroactivity jurisprudence established that police in that case acquired evidence through unlawful means). Good-faith reliance on binding precedent is not a doctrine that eliminates the causal connection between the illegal activity and the acquisition of the evidence. Rather, it treats that

connection as a given. The exception is thus inconsistent with Article 38.23's text. *See Daugherty*, 931 S.W.2d at 270 (once "the illegality and its causal connection to the evidence have been established, the evidence must be excluded" under Article 38.23).

Rather than arguing that the *Davis* exception for good-faith reliance on appellate precedent is consistent with the text of Article 38.23(a), the State argues that the marijuana evidence seized from McClintock's home should be exempted from exclusion under Article 38.23(b). Subsection (b) provides an exception to subsection (a) for evidence obtained by an officer "acting in objective good faith reliance upon a warrant issued by a neutral magistrate based upon probable cause." TEX. CODE CRIM. PROC. art. 38.23(b). The State asserts that the *Davis* exception applies in this case to save the dog-sniff evidence from being excluded from the magistrate's probable-cause determination.

The State concedes that, according to binding precedent, a "search warrant may not be procured lawfully by the use of illegally obtained information." *State v. Cuong Phu Le*, 463 S.W.3d 872, 877 (Tex. Crim. App. 2015) (quoting *Brown v. State*, 605 S.W.2d 572, 577 (Tex. Crim. App. 1980), *overruled on other grounds by Hedicke v. State*, 779 S.W.2d 837 (Tex. Crim. App. 1989)). Ordinarily, when a search warrant is issued on the basis of an affidavit containing illegally obtained information, as it was in this case, the evidence seized pursuant to the warrant is

admissible only if the independently and lawfully acquired information in the affidavit clearly established probable cause. *McClintock*, 444 S.W.3d at 19; *Brackens v. State*, 312 S.W.3d 831, 838 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd). The warrant in this case did not contain sufficient lawfully acquired information to clearly establish probable cause without the dog-sniff evidence. *McClintock*, 444 S.W.3d at 19–20.

The State argues that because Officer Arthur acted in good-faith reliance on pre-*Jardines* precedent when he conducted the dog-sniff search, the dog-sniff evidence should be acceptable to support the magistrate's probable-cause determination. This would allow the warrant the officers relied on to seize the marijuana evidence in this case to be a "warrant issued by a neutral magistrate based on probable cause," and therefore render the marijuana evidence admissible under the statutory exception. TEX. CODE CRIM. PROC. art. 38.23(b). The State contends that the bar against consideration of illegally obtained evidence in the probable cause determination for a warrant is a "judicial construct," not rooted in Article 38.23's text, which can be modified "as policy demands."

We are not persuaded by the State's argument that policy considerations justify disregarding Article 38.23(b) and applying the *Davis* exception to cure a flawed probable-cause determination. The State ignores the fact that it seeks an exception to a statutory remedy governed by Article 38.23. The Court of Criminal

15

Appeals has expressly held that the decision to implement such an exception must be rooted in an analysis of the text of Article 38.23. When considering whether the "inevitable discovery" doctrine could exempt evidence from exclusion in Texas, the Court explained:

> The whole issue here is whether for purposes of interpreting Article 38.23(a), we agree that "inevitable discovery" really does break the causal connection between the illegality and the evidence. That depends, of course, upon what Article 38.23(a) means when it says "evidence obtained in violation of" law. And this is purely a question of statutory construction. Not even the Supreme Court would presume to instruct us on how our own statutes should be construed. Were we implementing a court-made rule we would of course be free to follow the lead of the United States Supreme Court. However, because this is a statute enacted by the Texas Legislature, we are required to interpret the language of the statute in order to implement the legislative intent in enacting it.

*Daugherty*, 931 S.W.2d at 271. We, too, anchor our analysis to the text of Article 38.23, not our own evaluation of the wisdom of its policy.

Here, the State asks us to broaden the exception of Article 38.23(b) in a manner not supported by its text. It is true, as the State argues, that the text of Article 38.23(b) does not expressly forbid the consideration of illegally obtained evidence when considering whether the magistrate's warrant was based on probable cause. But nothing in subsection (b) expressly supports the State's expansive reading either, and "[w]here a statute contains an express exception, its terms must apply in all cases not excepted." *Daugherty*, 931 S.W.2d at 270. Thus,

subsection (a) must apply to suppress all evidence not expressly excepted by subsection (b).

The Court of Criminal Appeals has held that the phrase "based on probable cause" in Article 38.23(b) requires an independent finding of probable cause; an officer's good-faith reliance on a warrant subsequently invalidated for lack of probable cause does not fulfill the statutory exception. *See Curry v. State*, 808 S.W.2d 481, 482 (Tex. Crim. App. 1991). The exception in subsection (b) has only been satisfied in cases involving technical defects in warrants, not warrants with defects concerning probable cause. *See, e.g.*, *Dunn v. State*, 951 S.W.2d 478, 479 (Tex. Crim. App. 1997) (concluding that exception applied in case where warrant lacked magistrate's signature); *Brent v. State*, 916 S.W.2d 34, 38 (Tex. App.—Houston [1st Dist.] 1995, pet. ref'd) (holding that exception applied despite warrant based on unsigned affidavit). Furthermore, as recognized above, illegally obtained evidence cannot provide the probable cause necessary to support a warrant. *Le*, 463 S.W.3d at 877.

The State suggests that *Davis* provides a reason to deviate from these past decisions. But the Court of Criminal Appeals already has recognized that its interpretation of Article 38.23(b) stands in contrast to the federal good-faith exception, established in *United States v. Leon*, for officers relying on a subsequently invalidated warrant. *See Curry*, 808 S.W.2d at 482 ("[Article

17

38.23(b)] *requires a finding of probable cause*, while the exception enunciated in *Leon* appears more flexible in allowing a good faith exception if the officer's belief in probable cause is reasonable.").

The State's proposed application of the *Davis* exception essentially mirrors past attempts to use *Leon*, which the Court of Criminal Appeals already has held does not satisfy the text of Article 38.23(b). Tellingly, the Supreme Court itself recognized that its decision in *Davis* was merely an extension of the good-faith exception established in *Leon*. *See Davis*, 131 S. Ct. at 2428–29 ("Under our exclusionary rule precedents, [the] acknowledged absence of police culpability dooms Davis's claim. . . . Indeed, in 27 years under *Leon*'s good-faith exception, we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct."). We do not perceive any difference between the arguments previously rejected by the Court of Criminal Appeals and the State's proposed application of *Davis*.

We reject the State's proposed application of the *Davis* exception to allow consideration of illegally obtained evidence in the magistrate's probable cause analysis for a warrant. As the Court of Criminal Appeals affirmed, the dog-sniff search was unlawful. Binding precedent holds that illegally obtained evidence cannot provide probable cause to support a warrant. Based on past interpretation of Article 38.23, we conclude that the good-faith exception established in *Davis* does

not apply to allow the State to use the illegal dog-sniff evidence to support the warrant. As a result, the warrant used to seize the marijuana evidence from McClintock's residence was "not based on probable cause," and the marijuana evidence does not satisfy Article 38.23(b). Accordingly, the Texas exclusionary statute applies and the marijuana evidence must be suppressed. *See* TEX. CODE CRIM. PROC. art. 38.23(a).

## Conclusion

We overrule the State's sole issue. We remand the case to the trial court for a new trial without the evidence that should have been suppressed.

Michael Massengale
Justice

Panel consists of Justices Keyes, Massengale, and Brown

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).

# APPENDIX B



In The

## Court of Appeals

For The

## First District of Texas

———————————

**NO. 01-11-00572-CR**

———————————

**BRADLEY RAY MCCLINTOCK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 182nd Criminal District Court**
**Harris County, Texas**
**Trial Court Case No. 1280089**

## DISSENTING OPINION

I respectfully dissent. In this case, the police obtained a warrant to search appellant's upstairs residence for marijuana based on Houston Police Department Officer R. Arthur's affidavit that he smelled marijuana at that "location" and that

the trained narcotics-sniffing dog Sita likewise detected the odor of marijuana from the top of a public stairway outside the door of appellant's second-floor residence.

The Court of Criminal Appeals held that the warrantless dog sniff search on the curtilage of appellant's residence was illegal under *Florida v. Jardines*, decided while appellant's case was on appeal. *McClintock v. State*, 444 S.W.3d 15, 19 (Tex. Crim. App. 2014). The court then found that the affidavit on which the search warrant was obtained, based in part on the warrantless dog-sniff search, was "sufficiently ambiguous" that it could not be said that, without the narcotics dog's alert, the evidence the magistrate had before him to rely on in issuing the warrant, "even taken together with the other independently acquired information stated in the warrant affidavit , . . . *clearly* established probable cause." *Id.* at 19–20.

However, on petition for discretionary review, the State brought the court's attention to *Davis v. United States*, 131 S. Ct. 2419 (2011). The Supreme Court held in *Davis* that a new Supreme Court ruling that a search is illegal under the Fourth Amendment does *not* apply retroactively to render inadmissible evidence obtained from a search that occurred prior to the ruling that was conducted by the police in good faith in accordance with binding precedent at the time of the search. *See* 131 S. Ct. at 2425–26, 2429, 2434 (holding that exclusionary rule did not bar admission of weapon discovered during search of passenger compartment of vehicle incident to arrest of passengers, even though Supreme Court determined in

2

intervening case that such searches violate Fourth Amendment, because officer reasonably relied on binding precedent at time of search that permitted officer to search passenger compartment). The Court of Criminal Appeals remanded to this Court the question of whether, in light of *Davis*, evidence seized pursuant to a search warrant that was obtained, in part, as a result of a search subsequently declared to be in violation of the Fourth Amendment is admissible in Texas state courts under the good-faith exception to the exclusionary rule.

The majority's answer to this question—that the evidence is inadmissible—is, in my view, incorrect on the law. I would hold, in accordance with *Davis*, that the good-faith exception to the exclusionary rule applies in this case. Thus, the evidence obtained by police pursuant to the search warrant issued on the basis of probable cause supplied in part by the dog-sniff search then deemed legal under binding authority was not subject to exclusion. I would therefore affirm the judgment of the trial court.

### A. The Exclusionary Rule and the Good-Faith Exception

The majority concludes that Texas's exclusionary rule and its good-faith exception are statutory, not judicially created like the federal rule, and that the Texas exclusionary rule is broader than the federal rule. It holds that, therefore, *Davis*, a federal Supreme Court case, does not apply in Texas state court, and that it need not consider *Davis* in determining whether the evidence seized in this case

3

was admissible.  I disagree.  I believe the majority's holding is based on a misinterpretation of both the Texas exclusionary rule and its good-faith exception and the federal exclusionary rule and good-faith exception, as well as the relationship between them.

The federal exclusionary rule, parsed by the United States Supreme Court in *Davis*, is a "prudential doctrine" created by the Supreme Court "to compel respect for the constitutional guaranty" against "unreasonable searches and seizures" under the Fourth Amendment by requiring the courts to exclude illegally obtained evidence.  *Davis*, 131 S. Ct. at 2426 (quoting *Elkins v. United States*, 364 U.S. 206, 217, 80 S. Ct. 1437, 1444 (1960)); *see also id.* at 2427 (stating that exclusionary rule is "a 'judicially created remedy' of this Court's own making") (quoting *United States v. Calandra*, 414 U.S. 338, 348, 94 S. Ct. 613, 620 (1974)).  It is neither a "personal constitutional right" nor a redress for injury occasioned by an unconstitutional search.  *Id.* at 2426.  Rather, the rule's "sole purpose" is "to deter future Fourth Amendment violations" by rendering evidence seized in violation of the Fourth Amendment inadmissible.  *Id.*

Having promulgated the exclusionary rule, however, the Supreme Court recognized that its application "exacts a heavy toll" on the judicial system and the public by requiring the courts "to ignore reliable, trustworthy evidence bearing on guilt or innocence" and by causing the truth to be suppressed and criminals to be

4

set loose without punishment. *Id.* at 2427. Therefore, the Court further held that "[w]here suppression fails to yield 'appreciable deterrence,' exclusion is 'clearly . . . unwarranted.'" *Id.* at 2426–27 (quoting *United States v. Janis*, 428 U.S. 433, 454, 96 S. Ct. 3021, 3032 (1976)).

The Supreme Court thus requires a balancing test to determine whether evidence should be excluded under the rule. *See id.* at 2427–28. Under this test, exclusion is appropriate only when "the deterrence benefits of suppression . . . outweigh its heavy costs." *Id.* at 2427. "When the police exhibit 'deliberate,' 'reckless' or 'grossly negligent' disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful, . . . the 'deterrence rationale loses much of its force.'" *Id.* at 2427–28 (citations omitted).

On the basis of this rationale, the Supreme Court has long "extended the good-faith exception to searches conducted in reasonable reliance on subsequently invalidated statutes"; and it has "'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct"; thus, it has held that the exclusionary rule does not apply when police conduct a search in "objectively reasonable reliance" on a warrant later held to be invalid. *Id.* at 2428–29 (citing *Illinois v. Krull*, 480 U.S. 340, 349–50, 107 S. Ct. 1160, 1167 (1987),

5

and quoting *Herring v. United States*, 555 U.S. 135, 144, 129 S. Ct. 695, 702 (2009), and *United States v. Leon*, 468 U.S. 897, 922, 104 S. Ct. 3405, 3420 (1984)).

Relying on the foregoing reasoning and precedents, the Supreme Court held in *Davis* that "[e]vidence obtained during a search conducted in reasonable reliance on binding precedent is not subject to the exclusionary rule." *Id.* at 2429. In *Davis*, the Supreme Court expressly distinguished the *exclusionary rule* from the *retroactivity rule* for newly created Fourth Amendment precedent first announced in *Griffith v. Kentucky*, 479 U.S. 314, 107 S. Ct. 708 (1987). *See id.* at 2429–30. The retroactive application of a new substantive Fourth Amendment rule, it stated, "raises the question whether a suppression remedy applies; it does not answer that question." *Id.* at 2431. The Court explained, "[E]xclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred. The remedy is subject to exceptions and applies only where its 'purpose is effectively advanced.'" *Id.* Thus, because "the sole purpose of the exclusionary rule is to deter misconduct by law enforcement," where the police have not been guilty of any culpable conduct and have "reasonably relied on binding . . . precedent" in executing a search, "[t]hat sort of blameless police conduct . . . comes within the good-faith exception and is not properly subject to the exclusionary rule." *Id.* at 2432, 2434; *see also Leon*, 468 U.S. at 918, 104 S.

6

Ct. at 3418 ("[S]uppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule.").

Assuming the applicability in Texas state courts of Supreme Court precedent construing the Fourth Amendment, the exclusionary rule, and the good-faith exception to that rule, this case falls squarely within the scope of the good-faith exception to the federal exclusionary rule established by the Supreme Court in *Davis* and its predecessors. Here, there is no evidence whatsoever that the police exhibited "'deliberate,' 'reckless' or 'grossly negligent' disregard for Fourth Amendment rights" when they relied, in part, on a warrantless dog-sniff search to obtain a warrant to search appellant's residence. *See Davis*, 131 S. Ct. at 2427. Rather, they relied upon long-established and binding precedent in both the federal courts and the Texas courts stating that a dog sniff was not a search within the meaning of the Fourth Amendment and that the alert of a trained dog as to the presence of contraband could be relied upon to establish probable cause to obtain a legal warrant to search the premises where the alert occurred. *See, e.g.*, *Illinois v. Caballes*, 543 U.S. 405, 409, 410, 125 S. Ct. 834, 838 (2005) (use of "well-trained narcotics-detection dog" on motor vehicle during traffic stop "does not rise to the level of a constitutionally cognizable infringement" and "does not violate the Fourth Amendment"); *United States v. Tarazon-Silva*, 166 F.3d 341, 341 (5th Cir.

7

1998) (per curiam) (dog sniff of outer edge of garage and dryer vent on exterior wall of house was not search pursuant to Fourth Amendment); *United States v. Williams*, 69 F.3d 27, 28 (5th Cir. 1995) (per curiam) (positive dog alert creates probable cause to search vehicle); *United States v. Seals*, 987 F.2d 1102, 1106 (5th Cir. 1993) ("A dog 'sniff' is not a search."); *Romo v. State*, 315 S.W.3d 565, 573 (Tex. App.—Fort Worth 2010, pet. ref'd) (dog sniff of garage door and backyard fence of defendant's home not search for Fourth Amendment purposes); *Rodriguez v. State*, 106 S.W.3d 224, 228–29 (Tex. App.—Houston [1st Dist.] 2003, pet ref'd) (dog sniff conducted at front door of defendant's home not search); *Porter v. State*, 93 S.W.3d 342, 346–47 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd) (stating that investigative methods that can only detect existence of illegal items in home and do not reveal legal information about interior are not searches for Fourth Amendment purposes and holding that dog sniff outside front door did not constitute search under Fourth Amendment).

As these federal and state precedents show, the case law relating to dog sniffs occurring outside a public entrance to a defendant's home was deemed valid law at the time the search warrant issued in this case. It was only subsequently abrogated by *Jardines*. At that time, this case was already on appeal.

Here, the affidavit executed by Officer Arthur detailing both his own and the dog Sita's detection of the odor of marijuana from outside appellant's residence

was made in good faith, in reliance on binding precedent, and without culpability of any kind on the part of the police. *See* 131 S. Ct. at 2426–29. "In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause." *Leon*, 468 U.S. at 926, 104 S. Ct. at 3422. None of the conditions that would limit the applicability of the good-faith exception apply here. Therefore, relying on federal and state precedent, and applying the rule in *Davis* to the facts of this case, I would hold that, at the time it was made, Officer Arthur's affidavit provided probable cause for the magistrate to issue the search warrant pursuant to which the police obtained the evidence of the marijuana operation in appellant's home upon which he was convicted. And, I would further hold that the evidence obtained by the police in reliance on the warrant issued by the magistrate based in part on the then-legal warrantless dog-sniff search was admissible under the federal good-faith exception to the exclusionary rule.

## B. The Majority Opinion

The majority, however, holds that Texas's statutory exclusionary rule and its good-faith exception do not derive from the federal rule and, indeed, that Texas law expressly overrides the federal rule with its statutory exclusionary rule set out

in Texas Code of Criminal Procedure article 38.23(a).  With regard to *Davis*, the majority states, "[W]e need not address the parties' arguments about whether Officer Arthur acted with objective good-faith reliance on binding precedent if *Davis* does not create a valid exception to the Texas exclusionary statute."  Slip Op. at 9.  It then concludes that *Davis*'s holding is inconsistent with the terms of Texas's statutory good-faith exception to the exclusionary rule set out in article 38.23(b) and that *Davis* cannot and "does not create a valid exception to the Texas exclusionary statute."  Slip Op. at 9, 13–14.  Accordingly, it spends the rest of its opinion explaining why, in its view, the federal good-faith exception to the exclusionary rule, explicated in *Davis*, is inconsistent with Texas' statutory exclusionary rule and good-faith exception and is inapplicable here.

In my view, the majority opinion is based on two errors of law.  First, Texas did *not* pass its exclusionary statute to override the federal exclusionary rule and its good-faith exception devised by the United States Supreme Court for use in applying Fourth Amendment rulings.  It did just the opposite: it expressly adopted the federal rule and the federal case law that established and construes it.  Moreover, as shown above and below, the Texas courts have consistently followed both federal and state precedent in construing this statute, with a lone exception for a direct conflict between the language of article 38.23 and federal precedent—a conflict not present in this case.  Second, the majority's conclusion that the warrant

10

upon which the search of appellant's apartment was based was illegal at the time it was issued *assumes* the answer to the question posed to this Court by the Court of Criminal Appeals as its major premise. Therefore, it answers the question *whether* the warrant was illegal at the time it was issued by concluding that *because* the probable cause for the warrant was based in part on a warrantless dog-sniff search, which was only subsequently held to be unconstitutional in *Jardines*, the warrant was not based on probable cause at the time it was issued and, therefore, was illegal. This argument is both circular and question-begging and, in my opinion, its conclusion is incorrect.

### 1. Texas's Exclusionary Rule: Code of Criminal Procedure Article 38.23

Texas's exclusionary statute provides, in relevant part:

(a)     No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

. . . .

(b)     It is an exception to the provisions of Subsection (a) of this Article that the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause.

TEX. CODE CRIM. PROC. ANN. art. 38.23 (Vernon 2005). Subsection (a) sets out the exclusionary rule, and subsection (b) sets out the good-faith exception to the rule.

## *2. Miles v. State* *and the Origin and Scope of Texas's Exclusionary Rule*

Relying on the Court of Criminal Appeals' 2007 opinion in *Miles v. State*, the majority claims that the Texas exclusionary rule "is not merely a judicial creation" but "was enacted by the legislature," so that Texas courts may disregard the United States Supreme Court's construction of the rule. *See* Slip Op. at 10 (citing *Miles v. State*, 241 S.W.3d 28, 33–36 (Tex. Crim. App. 2007)). This is the opposite of what *Miles* actually says and is an incorrect statement of Texas law. The majority then states, "The Texas exclusionary statute is 'broader than its federal counterpart' and is therefore more broadly protective of individual rights." *Id.* at 11 (quoting *Miles*, 241 S.W.3d at 34). This statement is narrowly correct, but is applied by the majority out of context in this case to reach a conclusion supported neither by the text of the Texas exclusionary statute nor by the construction of that statute and its history as explicated by the Court of Criminal Appeals in *Miles*.

*Miles* discusses the history of the exclusionary rule at length, pointing out that the Texas Legislature enacted the predecessor to article 38.23 in 1925 expressly to overrule the 1922 Court of Criminal Appeals Prohibition-era case, *Welchek v. State*, 247 S.W. 524 (Tex. Crim. App. 1922). 241 S.W.3d at 33. In *Welchek*, the Court of Criminal Appeals had refused to recognize an exclusionary rule under the Texas Constitution for three jugs of whiskey seized without a

12

warrant and had "specifically rejected the reasoning of the United States Supreme Court cases that had imposed an exclusionary rule on federal courts under the Fourth Amendment." *Id.* The statute was thus enacted by the Texas Legislature to impose on Texas courts the exclusionary rule created by the United States Supreme Court for use in the federal courts. And it statutorily *abrogated* the Court of Criminal Appeals case that had refused to recognize the rule.

The Court of Criminal Appeals stated in *Miles*—directly contrary to what the majority says it states—that by enacting the exclusionary rule, now article 38.23, "[t]he Legislature thus 'sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution.'" *Id.* at 34 (quoting *Chapin v. State*, 296 S.W. 1095, 1100 (Tex. Crim. App. 1927)). The only difference with respect to the exclusionary rule as set out in the predecessor to article 38.23(a) was that the Texas Legislature expanded the rule to apply not only to evidence illegally seized by government officials, as the federal rule does, but also to evidence illegally seized by private individuals, by adding the phrase "or other person" to article 38.23(a). *Id.* at 34–35. Thus, the rule excludes evidence obtained "in violation of any provision of the Constitution or laws of the State of Texas, or of the United States of America" not only by "an officer" but also by an "other person," including "'vigilante-type private citizens [acting] in concert with the police conducting illegal searches for whiskey.'" *Id.* at 33–35 (quoting *State v.*

13

*Johnson*, 939 S.W.2d 586, 591 (Tex. Crim. App. 1996) (McCormick, P.J., dissenting)). However, this is the *only* way mentioned in *Miles* in which the Texas exclusionary rule was made statutorily broader than the federal rule. Because the issue in this case is the application of the exclusionary rule to evidence seized by police officers, the fact that article 38.23(a) extends the protection of the exclusionary rule to evidence seized by "other person[s]" is irrelevant to this case. Thus, there is no support in *Miles* for the majority's broadening of the exclusionary rule on the ground that article 38.23(a) is broader than the federal exclusionary rule.

The Court of Criminal Appeals' opinion in *Miles* cannot plausibly be construed as providing that, in enacting the exclusionary rule by statute in Texas, the Texas Legislature intended to reject the federal exclusionary rule and its construction by the federal courts and to impose broader protections against searches and the seizure of evidence by police than the United States Supreme Court has imposed upon the federal courts. *See id.* at 34 (stating that, in enacting predecessor to article 38.23, Legislature "sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution"). The only material difference between the exclusionary rule set out in article 38.23(a) and the federal rule is that the Texas statute extends the exclusionary rule to

evidence seized by "other persons" acting illegally.  The majority's argument that *Miles* supports its conclusion is, in my view, without merit.

*Miles* did not, however, deal with or discuss the statutory good-faith exception to the exclusionary rule set out in article 38.23(b).

### 3. The "Warrant Based on Probable Cause" Requirement and Article 38.23(b)'s "Good-Faith Exception" to the Exclusionary Rule

The majority also claims that the good-faith exception to the exclusionary rule, as the Supreme Court explicated it in *Davis*, cannot apply to this case because it is not consistent with the text of article 38.23(b), which sets out the good-faith exception to the exclusionary rule.  *See* Slip Op. at 12–13.  That text provides for an exception to the exclusionary rule for evidence "obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause."  TEX. CODE CRIM. PROC. ANN. art. 38.23(b).  The majority opines, "Notably, the statute contains an explicit exception in subsection (b) for evidence obtained in objective good-faith reliance on a warrant 'based on probable cause.'  The Court of Criminal Appeals has refused to entertain exceptions to the Texas exclusionary rule that are not consistent with Article 38.23's text."  Slip Op. at 12 (quoting TEX. CODE CRIM. PROC. ANN. art. 38.23(b)).

The majority opines that the good-faith exception to the exclusionary rule in *Davis* does not apply in this case because the good-faith exception as explicated in that federal Supreme Court case conflicts with the express language of article

15

38.23(b) by allowing illegally obtained evidence to be admitted. Slip Op. at 13–14. Thus, it opines, *Davis* creates an exception to the exclusionary rule in conflict with Texas law. *Id.* It also concludes that Texas case law, in construing the good-faith exception in article 38.23(b), does not recognize the authority of federal cases construing the federal good-faith exception to the exclusionary rule as precedential or persuasive. Slip Op. at 17–18. I disagree with both arguments and address them in turn.

### a. The argument that **Davis** *conflicts with article 38.23(b)*

Despite the majority's claims, there is no conflict between the plain language of article 38.23(b) and *Davis*. Article 38.23(b) provides a statutory good-faith exception to the exclusionary rule that permits the admission of evidence that was obtained by a law enforcement officer acting in objective good-faith reliance upon a warrant issued by a neutral magistrate based on probable cause. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). *Davis* does not conflict with that language in any way. And merely claiming—as the majority does—that *Davis* conflicts with the text of article 38.23(b) because a warrantless dog-sniff search is *unlawful* and therefore cannot provide probable cause for a warrant entirely begs the question posed to this Court by the Court of Criminal Appeals: Does the good-faith exception to the exclusionary rule preserve the admissibility of evidence that was obtained pursuant to a warrant issued on the basis of probable cause supplied, in

16

part, by a warrantless search that was deemed *lawful* under binding precedent at the time of the search but that was *subsequently* held by a new ruling of the Supreme Court *to be unlawful* under the Fourth Amendment? Or does the subsequent Supreme Court ruling holding a warrantless dog-sniff search to be illegal operate retroactively to make the warrantless dog-sniff search *unlawful at the time of the search*, vitiating the probable cause relied upon to obtain the warrant to search appellant's apartment and rendering that search unlawful and the evidence seized inadmissible?

*Davis* says that the Supreme Court's subsequent ruling that a warrantless search is constitutionally invalid does *not* retroactively render inadmissible evidence that was obtained by police officers in good-faith reliance on binding precedent that, at the time of a warrantless search, deemed the search legal, and no Texas law says anything different. *See* 131 S. Ct. at 2429. The majority, however, ignores *Davis* as inapplicable and says, on the basis of no authority other than its misreading of relevant law, that *Jardines* made the dog-sniff search in this case retroactively illegal and therefore the good-faith exception does not apply.

Essentially, the majority reasons that article 38.23(b) saves from exclusion only evidence seized in good-faith reliance on a warrant "based on probable cause," and it concludes that the evidence in this case was *not* obtained pursuant to a warrant "based on probable cause" because *Jardines* retroactively vitiated the

17

probable cause finding necessary to sustain the warrant when it declared the warrantless dog-sniff on which this warrant was, in part, obtained unconstitutional. *See* Slip Op. at 15–17. But this argument, as stated above, is circular. A circular argument is an invalid argument that cannot support a legal ruling—here, the majority's ruling that *Jardines* applies retroactively to exclude the marijuana evidence seized from appellant's house.

When the question posed to us by the Court of Criminal Appeals is actually addressed, the answer to it is the opposite of the majority's. At the time the warrant issued in this case—which was well prior to the Supreme Court's decision in *Jardines* declaring warrantless dog-sniff searches occurring on the curtilage of a residence unconstitutional—an unbroken string of Texas precedential cases relying on both federal and Texas law interpreted the Fourth Amendment to permit just such warrantless dog sniffs. *See Caballes*, 543 U.S. at 409, 410, 125 S. Ct. at 838 (use of "well-trained narcotics-detection dog" during traffic stop does not violate Fourth Amendment); *Tarazon-Silva*, 166 F.3d at 341 (dog sniff of garage and vent on exterior of house not search under Fourth Amendment); *Williams*, 69 F.3d at 28 (positive dog alert creates probable cause to search vehicle); *Romo*, 315 S.W.3d at 573 (dog sniff of garage door and backyard fence not search under Fourth Amendment); *Rodriguez*, 106 S.W.3d at 228–29 (dog sniff at front door of house not search); *Porter*, 93 S.W.3d at 346–47 (same). Therefore, under *Davis*, the

18

evidence seized pursuant to the warrant here should not have been excluded, as it was seized pursuant to "a warrant issued by a neutral magistrate based on probable cause," as required by the plain language of article 38.23(b), and that was obtained by officers acting in good-faith reliance on a warrantless dog-sniff search, which had long been held to be legal under binding Texas and federal precedent.

*Jardines* construes the reach of the Fourth Amendment and *Davis* continues a long line of federal and state cases construing the exclusionary rule and holding that evidence seized in violation of the Fourth Amendment through police *misconduct* must be excluded *but* that evidence seized by the police in *good faith* need not be.

### b. *Texas case law construing the scope of the good faith exception*

No Texas case law prior to the majority opinion in this case has held that Texas does not follow United States Supreme Court rulings construing the exclusionary rule and its good faith exception. Rather, *Miles* expressly states that, in enacting the predecessor to article 38.23, the Texas Legislature "sanctioned the construction by the Federal courts of the search-and-seizure clause of the [federal] Constitution." 241 S.W.3d at 34 (quoting *Chapin*, 296 S.W. at 1100). And the Texas exclusionary statute was explicitly based on the federal exclusionary rule— as the Court of Criminal Appeals has acknowledged. *See id.*

The majority places great emphasis on two Court of Criminal Appeals opinions construing Texas's statutory good-faith exception to the exclusionary rule that it contends support its ruling—*Wehrenberg v. State*, 416 S.W.3d 458 (Tex. Crim. App. 2013), and *State v. Daugherty*, 931 S.W.2d 268, 269 (Tex. Crim. App. 1996). Neither of these cases, however, supports the majority's opinion. Rather, as the cases show, federal law construing the exclusionary rule and the good-faith exception apply in every Texas state court case under article 38.23 unless the express language of that article renders federal precedent inapplicable. *Daugherty* and *Wehrenberg* illustrate this point.

In *Daugherty*, the Court of Criminal Appeals held that the federal "inevitable discovery" doctrine—which permits the admission of evidence in federal court that was *unlawfully* obtained but that would inevitably have been discovered—is inapplicable in Texas because the plain language of article 38.23(b) provides a good faith exception to the exclusionary rule only for evidence that was *lawfully* obtained. *See* 931 S.W.2d at 270. Specifically, article 38.23(b) protects the admissibility only of "evidence . . . obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued . . . based on probable cause." TEX. CODE CRIM. PROC. ANN. art. 38.23(b). The court held in *Daugherty* that the terms of article 38.23 "must apply in all cases not excepted" and that when the evidence was, in fact, seized illegally, the illegality of the seizure may not be

20

ignored simply because the evidence would have been discovered anyway. 931 S.W.2d at 270–71. However, *Daugherty*, by its own terms, is inapplicable in this case because the inculpatory evidence against appellant was obtained pursuant to a warrant that was issued on the basis of probable cause that was deemed *lawfully* obtained under both federal and state precedent at the time of the search. The courts, therefore, do not have to rely in this case on the inevitable discovery of appellant's marijuana operation to justify admissibility of that evidence because it was obtained pursuant to a warrant that was itself deemed lawfully obtained at the time it issued. This is the exact opposite of the situation in *Daugherty*.

*Wehrenberg*, however, represents the other side of the coin from *Daugherty*, and it *is* applicable here. In that case, the Court of Criminal Appeals upheld the admissibility in Texas courts of evidence *lawfully obtained* pursuant to the federal "independent source" doctrine. *Wehrenberg*, 416 S.W.3d at 472–73. And it specifically contrasted that doctrine with the "inevitable discovery" doctrine, which the court had held in *Daugherty* does not save from exclusion evidence *unlawfully obtained* on the ground that it inevitably would have been discovered. *Id.* The court explained the difference, stating, "Although evidence that has actually been acquired in an unlawful manner is considered 'obtained' in violation of the law, regardless of whether it inevitably would have been discovered, the same cannot be said of evidence discovered and obtained pursuant to an

independent source because that evidence is *lawfully obtained at the time of seizure*." *Id.* (emphasis added). This is exactly what happened here.

This case is properly governed by *Wehrenberg* and *Davis*. There is no inconsistency between the plain language of article 38.23 and *Davis*'s (and its federal and state predecessors') holding that the exclusionary rule does not apply to evidence obtained when police conduct a search in "objectively reasonable reliance" on a warrant lawfully obtained under "binding judicial precedent" at the time of the search, even if, under a subsequent Supreme Court interpretation of the Fourth Amendment, the warrant would be considered to have been unlawfully obtained. *See Davis*, 131 S. Ct. at 2428. There is also no evidence of any culpable police conduct that would render the good-faith exception inapplicable. *See id.* at 2428–29. And there is no language in article 38.23(b) that is inconsistent with the Texas courts holding admissible evidence obtained in "objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause" at the time of seizure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23(b). Thus, under *Davis* and *Wehrenberg*, the evidence of appellant's marijuana operation should be deemed "lawfully obtained at the time of seizure." *See Wehrenberg*, 416 S.W.3d at 473.

In sum, *Jardines* extends the protection of the exclusionary rule to evidence seized as a result of a warrantless dog sniff on the curtilage of a residence. And

*Davis* preserves the admissibility of evidence seized by the police prior to that ruling pursuant to a warrant obtained in good-faith reliance on binding precedent at the time the warrant was obtained. Nothing in Texas law or in the text of article 38.23 provides any basis for applying *Jardines* and ignoring *Davis* in this case.

Having failed to address *Davis*, however, and without showing any genuine conflict between the federal good-faith exception to the exclusionary rule as explicated in *Davis* and the express terms of Texas's statutory good-faith exception set out in article 38.23(b) or any genuine conflict between applicable federal law construing the good-faith exception and controlling Texas precedent, the majority in this case does exactly the *opposite* of what the Supreme Court said in *Davis* that a court construing the exclusionary rule and its good-faith exception in deciding Fourth Amendment cases *should* do: it declares the warrant obtained by Officer Arthur to search appellant's residence to be illegal because of the *subsequent* change in the construction of the Fourth Amendment by the Supreme Court in *Jardines* and then declares the officers' actions in executing the warrant *retroactively illegal* and the evidence seized under the warrant inadmissible, even though the search was undertaken in objective good faith and was based on probable cause under precedent binding at the time the warrant was issued.

The majority's construction of the text of article 38.23 is not only unfounded in law but objectively unreasonable under the Supreme Court and Texas cases that

23

established the exclusionary rule and its good faith exception, in that it entails exactly the absurd consequences avoided by applying the exclusionary rule and the good-faith exception in accordance with *Davis*, *Miles*, and *Wehrenberg*. The majority opinion requires the courts to construe the exclusionary rule as having the *opposite* purpose from that for which it was promulgated—the deterrence of police illegality—and to apply it where that purpose is *not* advanced and, therefore, should *not* be applied. *See Miles*, 241 S.W.3d at 35 ("Deterrence of police illegality is the 'core' rationale for applying the federal exclusionary rule . . . ."); *see also Davis*, 131 S. Ct. at 2431 ("[E]xclusion of evidence does not automatically follow from the fact that a Fourth Amendment violation occurred. The remedy is subject to exceptions and applies only where its 'purpose is effectively advanced.'") (citations omitted). The majority's holding thus vitiates the purpose of both the exclusionary rule and the good faith exception.

For the foregoing reasons, I cannot join the majority opinion or its holding, and I therefore must dissent.

## Conclusion

I would affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Massengale, and Brown.

Justice Keyes, dissenting.

Publish.  TEX. R. APP. P. 47.2(b).